1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Christopher J. Reichman  SBN 250485
chrisr@prato-reichman.com
Justin Prato, SBN 246968
justinp@prato-reichman.com
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971

Attorney for all Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| DAVID MEYER, et. al. | Case No.: 15-CV-2405-WVG |
|---|---|
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS:** |
| vs. | |
| CAPITAL ALLIANCE GROUP, et. al., | **CAPITAL ALLIANCE GROUP,** |
| Defendants. | **CAPITAL ALLIANCE PARTNERS,** |
| | **NARIN CHARANVATTANAKIT, and** |
| | **MARK MENDOZA** |
| | **Hon. William V. Gallo** |
| | **Hearing Sept 18, 2017, 2:00 pm** |

# **TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . 6

II. SEPARATE STATEMENT OF FACTS & PROCEDURAL HISTORY . 7

III. STANDARD OF REVIEW . . . . . . . . 7

IV. ARGUMENT . . . . . . . . . . 8

  A.  Plaintiff's Summary Judgment Against Capital Alliance Group on
the First Cause of Action (TCPA – Unsolicited Fax Ads) . . . 8

    1) Defendant Capital Alliance Group sent the fax ads. . . . 9

    2) The faxes at issue were unsolicited advertisements. . . 11

    3) The fax ads were sent to a telephone facsimile machine. . . 11

  B.  Plaintiff's Summary Judgment Against Capital Alliance Group on
the Second Cause of Action (Cal. B&P Code §17538.43 –
Unsolicited Fax Ads in California) . . . . . . . 12

    1) Defendant Capital Alliance Group sent the fax ads. . . 12

    2) The faxes at issue were unsolicited advertisements. . . 13

    3) The fax ads were sent to a telephone facsimile machine. . . 13

  C.  Plaintiff's Summary Judgment Against Capital Alliance Group on
the Third Cause of Action (TCPA – Prerecorded Calls To Cell Phone) . 14

    1) Defendant Capital Alliance Group made the calls. . . 14

    2) The calls used a prerecorded voice. . . . . 18

    3) To a number assigned to a cellular telephone service. . . 18

  D. Plaintiff's Summary Judgment Against Capital Alliance Group on
the Sixth Cause of Action (TCPA– Blocked Caller ID) . . . 18

  E)  Personal Liability of Defendant Corporate Officers Narin
Charanvattanakit and Mark Mendoza . . . . . 22

  F) Plaintiff Is Entitled To Statutory Damages For All The Violations . 24

  G)  Plaintiff is Entitled To "Willful" or "Knowing" Trebled Damages . 25

V. CONCLUSION . . . . . . . . . 27

Plaintiff's Partial Motion for Summary Judgment – Points & Authorities

# TABLE OF AUTHORITIES

## CASES

U.S. Supreme Court

*Celotex Corp v. Catrett*, 477 U.S. 317 (1986)  .  .  .  .  .  7, 8

*Anderson v. Liberty Lobby*, Inc., 477 U.S. 242 (1986)  .  .  .  .  7

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)  .  .  .  16


Circuit Courts

*Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975 (9th Cir., 2006)  .  .  7

*Gomez v. Campbell-Ewald Co.*, 768 F. 3d 871 (9th Cir., 2014),

*aff'd*, 136 S.Ct. 663 (2016)  .  .  .  .  .  .  .  .  15

*Thomas v. Taco Bell Corp.*, 582 Fed.Appx. 678, 679 (9th Cir., 2014)  .  .  16

*Palm Beach Golf Center-Boca, Inc. v. Sarris*,

781 F.3d 1245 (11th Cir., 2015)  .  .  .  .  .  .  .  10

*Siding and Insulation Co. v. Alco Vending*, Inc.,

822 F.3d 886 (6th Cir., 2016)  .  .  .  .  .  .  .  10


District Courts

*Texas v. American Blast Fax, Inc.*,

164 F. Supp. 2d 892 (W.D. Tex. 2001)  .  .  .  .  .  .  22

*Monsanto Co. v. Hill*, 2004 WL 4996339 (E.D. Mo., 2004)  .  .  .  22

*Charvat v. Echostar Satellite*, LLC, 621 F.Supp.2d 549,

558 (S.D. Ohio 2008), *remanded on other grounds,*

*Charvat v. Echostar Satellite*, LLC 630 F.3d 459 (6th Cir., 2010)  .  .  21

*Sengenberger v. Credit Control Servs.*, 2010 WL 1791270 (N.D. Ill., 2010),

*citing, Smith v. Wade,* 461 U.S. 30, 41 n. 8 (1983)  .  .  .  .  26

*Worsham v. Travel Options, Inc.*, 2016 WL 4592373, *4 (D. Md. 2016)  .  21

Plaintiff's Partial Motion for Summary Judgment – Points & Authorities

*Krakauer v. Dish Network, LLC*,

2017 WL 2242952 (M.D.N.C. 2017)   .   .   .   .   .   .   17-24

*United States of America et al. v. Dish Network LLC*,

2017 WL 2427297, *135 (C.D. Ill. 2017)   .   .   .   .   .   .   17


State Courts

*Charvat v. Ryan*, 858 N.E.2d 845, 168 Ohio App.3d 78,

2006 Ohio 3705 (Ohio App., 2006)   .   .   .   .   .   .   .   25

*Charvat v. Ryan*, 116 Ohio St. 3d 394, 2007 Ohio 6833,

879 N.E.2d 765, 770-771 (Ohio 2007)   .   .   .   .   .   .   27

# FCC AUTHORITIES

*Report and Order, Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (1992)   19-20

*In re Rules and Regulations Implementing the TCPA*,

10 FCC Rcd. 12391 (1995)   .   .   .   .   .   .   .   .   10

*Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, 18 FCC Rcd. 14014 (2003)   .   .   .   11, 20, 21

*In the Matter of Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991, Request of ACA International*

*for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559 (2008)   .   .   9

*In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2012)   .   .   .   15-16

*In the Matter of Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 27 FCC Rcd. 1830 (2012)   .   .   .   14

*Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*,

71 FR 75122, 012006 WL 3623623 (December 14, 2006)   .   .   .   20

## STATUTES

15 U.S.C. § 6101 . . . . . . . . . . 20

47 U.S.C. § 217 . . . . . . . . . 22, 24

47 U.S.C. § 227 . . . . . . . . . . 5-27

47 U.S.C. § 312 . . . . . . . . . . 25

47 C.F.R. § 64.1200 . . . . . 8, 9, 11, 13, 14, 21, 26

47 C.F.R. § 64.1601 . . . . . . . . . 18-22

California Business and Professions Code § 17538.43 . . . 6, 12, 13, 24, 25


## RULES

F.R.C.P. 56 . . . . . . . . . . 7-8

F.R.C.P. 8 . . . . . . . . . . 9, 12

Local Rule 7.1(f) . . . . . . . . . . 7


## OTHER

Restatement (Third) of Agency (Am. Law Inst. 2006) . . . 16-17

Black's Law Dictionary (2nd ed. 1910) . . . . . . 25

# I. INTRODUCTION

Plaintiffs move for partial summary judgment on the causes of action that form the primary gravamen of the Second Amended Complaint: the Telephone Consumer Protection Act ("TCPA") violations for the unsolicited facsimile advertisements ("fax ads") and prerecorded telemarketing calls, as well as the California 'Little TCPA', Business and Professions Code § 17538.43.  Plaintiffs also limit the summary judgment to the actors who are liable without any doubt, Capital Alliance Group, Inc. ("Capital Alliance Group"), its co-owner and C.E.O., Mr. Narin Charanvattanakit, and its other co-owner and C.F.O., Mr. Mark Mendoza (collectively, "Defendants" for the purposes of this motion).  The liability of these Defendants for the TCPA violations is clearly established by uncontested facts.

The TCPA is a relatively simple statute that reigns in junk marketing over the interstate telephone network by creating private rights of action so people whose privacy is intruded upon.  Companies who send unsolicited fad ads or make prerecorded telemarketing calls without first obtaining consent from the persons their intrusive marketing may bother subject themselves to strong economic sanctions which curb these bad practices in general.

In this case, there is simply no doubt that the Defendants addressed in this motion hired a company to send unsolicited fax ads, that they did so, and that the toll free numbers on the fax ads rang back to Defendants.  Similarly, there is no doubt that the Defendants hired a company to transmit  prerecorded and unsolicited automated phone calls, and that if the recipient of the call pushed through the push button menus the call would connect to one of Defendants' live sales representatives.

Defendants try to hide from their brazenly illegal marketing actions by pointing the finger at the agents they hired to transmit their faxes and calls.  This is no defense to the faxes, where the Federal Communications Commission ("FCC")

has authoritatively ruled that the company on whose behalf the fax ads are sent is liable regardless of the use of a fax broadcaster.  It is no defense to the prerecorded telemarketing calls where the FCC and the Ninth Circuit have ruled that normal agency liability for putting a call center agent in motion makes the Defendants liable for the calls made for their benefit.

## II. SEPARATE STATEMENT OF FACTS & PROCEDURAL HISTORY

As required by Local Rule 7.1(f), a Separate Statement of Undisputed Facts is attached hereto as well as exhibits or declarations showing each such undisputed fact.  Procedurally, this case comes from Defendant's remand from the California Superior Court, though Defendants confusingly now seem to claim that subject matter jurisdiction is wanting in some or all of the case.  [Docket No. 1, 48].  The Second Amended Complaint is the operative complaint.  [Docket No. 1-1].  The only causes of action at issue in this partial motion for summary judgment are Counts One through Three and Count Six, and only as against the Defendants identified in the caption and above.

## III. STANDARD OF REVIEW

Any party may move for summary judgment. F.R.C.P. 56(a)-(e). Summary judgment is appropriate on "all or part" of a claim if there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  F.R.C.P 56; *see also*, *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986) ("*Celotex*").  A fact is material when, under the governing substantive law, the fact could affect outcome of the case.  *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).  Once the moving party makes its initial showing that there is no genuine issue of material fact, "[t]he burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." *Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975, 987 (9th Cir., 2006), *citing*,

*Celotex*, 477 U.S. at 324). The nonmoving party cannot "rest upon the mere allegations or denials in the pleadings", but must "by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" F.R.C.P. 56(e); *Celotex*, 477 U.S. at 24.

# IV. ARGUMENT

## A. Plaintiff's Summary Judgment Against Capital Alliance Group on the First Cause of Action (TCPA Violation – Unsolicited Fax Ads)

The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). Therefore, the uncontested evidence must show that Defendant:

1) to send via fax

2) an unsolicited advertisement

3) to a telephone facsimile machine.

The only statutory defenses are prior express consent or the sender having an established business relationship with the recipient before transmittal, and both have additional technical requirements like providing an opt-out notice. 47 C.F.R. § 64.1200(a)(4)(iv), and (a)(4)(i - iii), respectively.[1] However, the Defendant, not

---

[1] In Defendants' Motion To Dismiss, they incorrectly claim that merely appending an "opt-out" notice somehow makes any fax ad TCPA-compliant. Their mistake is not following the "or" and "and" connections in the established business relationship defense subsection. For that defense in subsection (a)(4)(i - iii) to apply they need to show all of the subparts (i) through (iii):

"(4) Use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine, unless—

   (i) The unsolicited advertisement is from a sender with an established business relationship [] with the recipient; **_and_**

   (ii) The sender obtained the number of the telephone facsimile machine through—

      (A) The voluntary communication of such number by the recipient directly to the sender []; or

      (B) A directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution. If a sender obtains the facsimile number from the

---

Plaintiff, bears the burden of proving any affirmative defenses. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559, 465 at para. 10 (2008) (defense bears burden of showing consent type defenses), F.R.C.P. 8(c).

### **1) Defendant Capital Alliance Group sent the fax ads**.

Capital Alliance, though its CEO, Mr. Charanvattanakit, admits it hired a company called Absolute Fax to send fax ads on its behalf. [Declaration of Justin Prato ("Decl. Prato"), Exhibit A, Deposition of Charanvattanakit taken on February 28, 2017 ("Charanvattanakit 2017 Depo"), p. 33, ln. 9 – 14; p. 34 ln. 1-6 p. 35 ln. 12-14]. Mr. Charanvattanakit agrees that he knew Absolute Fax would send fax advertisements for Capital Alliance Group. [Charanvattanakit 2017 Depo, p .44 ln. 19 – p. 45 ln. 5]. Mr. Charanvattanakit admits Capital Alliance Group paid Absolute Fax to send the fax ads. [Charanvattanakit 2017 Depo, p. 41 pg 21- p. 42 ln 12]. Mr. Charanvattanakit admits that Absolute Fax sent these fax ads. [Charanvattanakit 2017 Depo, pg 33 ln 6 – pg 35 ln 11]. He also admits that he did not discuss TCPA compliance with Absolute Fax. [Declaration of Justin Prato ("Decl. Prato"), Exhibit B, Deposition of Charanvattanakit taken on May 19, 2014 ("Charanvattanakit 2014 Depo"), p. 33 ln. 13 – 16]. The phone numbers on every one of the fax ads received by Plaintiffs forwards to Capital Alliance Group via its

---

recipient's own directory, advertisement, or Internet site, it will be presumed that the number was voluntarily made available for public distribution, unless such materials explicitly note that unsolicited advertisements are not accepted at the specified facsimile number. If a sender obtains the facsimile number from other sources, the sender must take reasonable steps to verify that the recipient agreed to make the number available for public distribution.

(C) This clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005 []; ***and***
(iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if— [A through E, technical requirements of 'opt-out' notice']." 47 C.F.R. §64.1200 [emphasis added]

telephone service Ringcentral.com.  [Decl. Prato ¶8-9; Expert Report of Jeffery A. Hanson]. Mr. Charanvattanakit and Capital Alliance Group appear to be of the mistaken belief that the use of a third party to transmit the fax ads affects their liability for transmitting the faxes.

The FCC has authoritatively ruled on who is liable as the 'sender' when a company uses a third party fax broadcaster to transmit fax ads.  "**Decision.  We clarify that the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements**, and that fax broadcasters are not liable for compliance with this rule."  *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12407 at para. 35 (1995) [emphasis added].  This bright line ruling is just for fax violations, for other types of TCPA violations like telemarketing calls the FCC has ruled that the federal common law of agency applies.  *See, c.f, In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2012).  Indeed, both the Sixth and Eleventh Circuit Courts of Appeals have recently noted this exact difference between the FCC's treatment of calls (agency law) and faxes (advertiser always liable) and relied on the "on behalf of" liability in making fax ad rulings.  *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1254-57 (11th Cir., 2015) (citing to Court-requested opinion letter from FCC), *Siding and Insulation Co. v. Alco Vending*, Inc., 822 F.3d 886, 891-898 (6th Cir., 2016).

In this case it is undisputed that Capital Alliance Group, though its CEO, Mr. Charanvattanakit hired a company called Absolute Fax to send fax ads on its behalf, knew it would transmit these fax ads, and admits that the fax ads were actually transmitted. All of the fax ads Plaintiffs received had phone numbers on them that forwarded directly to Capital Alliance Group.  There is therefore no doubt that the faxes at issue were sent at the behest of and on behalf of Defendant Capital Alliance Group.

## 2) The faxes at issue were unsolicited advertisements.

"The term *unsolicited advertisement* means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 C.F.R § 64.1200(f)(15).  It is clear from the face of the faxes that they advertise the commercial availability of loan brokerage services.  [Declaration of Kenneth Moser ("Decl. Moser") ¶8, Exhibit A. Declaration of Arnie Katz ("Decl. Katz") ¶14-15, Exhibit A, Declaration of David Meyer ("Decl Meyer") ¶6-7, Exhibit A].  As mentioned above, the phone numbers on every one of the fax ads received by Plaintiffs forwards to Capital Alliance Group via its telephone service Ringcentral.com.  [Decl. Prato ¶8-9; Expert Report of Jeffery A. Hanson]. None of the Plaintiffs solicited or requested these fax ads in any way shape of form. [Decl. Moser ¶9 , Decl. Meyer ¶8 , Decl. Katz ¶16]. Therefore the unsolicited faxes at issue in this case advertise the commercial availability of Capital Alliance Group's loan brokerage services.

## 3) The fax ads were sent to a telephone facsimile machine.

Plaintiff DCM Properties, Inc., received the fax ads on a traditional paper and ink fax machine.  [Decl. Meyer ¶4-5]. This meets the traditional and statutory definition of a telephone facsimile machine.  47 C.F.R. § 64.1200(f)(13). Plaintiffs Arnie Katz and Ken Moser received the fax ads using an electronic fax server. [Decl. Moser ¶2-5 , Decl. Katz ¶8-12]. The FCC has authoritatively ruled that, "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14133 at para. 200 (2003) ("*FCC 2003 Order*"). Therefore, all Plaintiffs received all faxes on devices or services meeting the definition of telephone facsimile machines.

**B.  Plaintiff's Summary Judgment Against Capital Alliance Group on the Second Cause of Action (Cal. B&P Code §17538.43 – Unsolicited Fax Ads in California)**

Subsection (b)(1) of the California Business and Professions Code section 17538.43 makes it unlawful, "for a person or entity, if either the person or entity or the recipient is located within California, to use any telephone facsimile machine, computer, or other device to send, or cause another person or entity to use such a device to send, an unsolicited advertisement to a telephone facsimile machine." The elements are similar to the previous TCPA fax ad violation with the additional element that the sender or recipient be located in California:

1) to send via fax, or to cause another person/entity to send via fax,

2) an unsolicited advertisement

3) to a telephone facsimile machine, and

4) sender or recipient must be located in California.

The only statutory defense is for professional or trade associations that are tax-exempt nonprofit organizations sending non-commercial faxes to members who voluntarily agree to receive them.  B&P Code §17538.43(d).  As above, the Defendant, not the Plaintiff bears the burden of proving affirmative defenses.  *See*, F.R.C.P. 8, generally.

**1) Defendant Capital Alliance Group sent the fax ads.**

Here, the California law expressly creates liability for, causing "another person or entity to use such a device to send, an unsolicited advertisement to a telephone facsimile machine".  B&P Code §17538.43(b)(1).  Therefore, this law parallels the TCPA fad ad violation where the FCC ruled that the person on whose behalf the fax was sent is liable for sending it.  So the analysis is the exact same as section A. 1, above, and the same uncontested evidence shows Capital Alliance Group caused the faxes at issue to be sent.

## 2) The faxes at issue were unsolicited advertisements.

The California law defines 'unsolicited advertisement' using the exact same language as the TCPA's code.  *Compare*, 47 C.F.R. § 64.1200(f)(13), *with* B&P Code §17538.43(a)(2).  The only distinction is that the California law defines express consent in a second sentence in the definition whereas the TCPA code defines consent in the violation section itself.  It is irrelevant since Plaintiffs all declaimed any consent and Defendants have produced no facts regarding consent.  So the analysis is the exact same as section A. 2, above, and the same uncontested evidence shows that the faxes Capital Alliance Group sent are unsolicited advertisements.

## 3) The fax ads were sent to a telephone facsimile machine.

The California law defines a telephone fax machine as, "equipment that has the capacity to do either or both of the following:

(A)  Transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line.

(B)  Transcribe text or images, or both, from an electronic signal received over a regular telephone line onto paper."  Code §17538.43(a)(1). This definition is broader than the TCPA's code section and encompasses electronic fax services without recourse to an FCC/PUC order since an electronic fax service easily has the **capacity** to transcribe text or images from paper into an electronic signal to send over a telephone line or receive such a transmission and reduce it to paper (as well as to Adobe Acrobat and other electronic file types). While such services usually use electronic files, there is no doubt they have the capacity to print to paper, and were even used to do so in this case.  [Decl. Moser ¶5-6, Decl. Katz  ¶12].  So the analysis is the exact same as section A. 3, above, and the same uncontested evidence shows that the fax ads Capital Alliance Group sent were to Plaintiffs' telephone facsimile machines.

## C.  Plaintiff's Summary Judgment Against Capital Alliance Group on the Third Cause of Action (TCPA Violation – Prerecorded Calls To Cell Phone)

The TCPA makes it unlawful for any person to "Make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  47 U.S.C. §227(b)(1)(A)(iii).  The elements relevant to this case are therefore:

1) make a call

2) using a prerecorded voice

3) to a number assigned to a cellular telephone service.

The only statutory defenses are for calls made with prior express written consent, calls made on behalf of a tax-exempt non-profit, and/or calls that deliver a health care message by a health care provider or associate.  47 C.F.R. § 64.1200(a)(2).  Asserting and proving "prior express written consent" or other statutory defense are the burden of the defending party.  *See*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 at para. 33 (2012).

Please note that the Second Amended Complaint only claims four prerecorded calls and all of them were made solely to Plaintiff Ken Moser.  This is different from the fax ad violations where multiple plaintiffs received faxes.

### 1) Defendant Capital Alliance Group made the calls.

Capital Alliance, though its CEO, Mr. Charanvattanakit, admits it hired a company called Message Communications to make calls on its behalf. [Charanvattanakit 2017 Depo, p. 94 ln. 1 -12]. Mr. Charanvattanakit agrees that he knew Message Communications would make prerecorded phone calls for Capital

Alliance. [Charanvattanakit 2017 Depo, p. 76 ln. 5 -10]. Mr. Charanvattanakit admits Capital Alliance paid Message Communications to make the calls. [Charanvattanakit 2017 Depo, p. 76 ln. 18– p 77 ln 9]. Mr. Charanvattanakit admits that Message Communications made these calls. [Charanvattanakit 2017 Depo, p. 76 ln. 5-7]. Mr. Ken Moser received four of these calls. [Decl. Moser ¶ 24, 30, 33, 35]. While the Caller ID was falsified and no company name was used in the prerecorded portion of the call to try to evade liability, Mr. Moser played along with two of the calls and after answering a few prerecorded "push 1 if you are interested" type automated queries, he was connected to a sales representative working for Capital Alliance Group. [Decl. Moser ¶ 26-27]. After the calls wherein Mr. Moser faked interest to determine the identity of the caller, Capital Alliance Group sent him follow up e-mails identifying themselves as the caller. [Decl. Moser ¶ 26-29, Exhibit D]. One of those e-mails even states that it is from the desk of Defendant Mark Mendoza. [Decl. Moser ¶ 38-39, Exhibit E]. Mr. Charanvattanakit and Capital Alliance appear to be of the mistaken belief that the use of a third party to transmit the prerecorded portion of their calls absolves their liability for making the calls.

The FCC has ruled that although "a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013). The Ninth Circuit Court of Appeals has affirmed this ruling and accorded it *Chevron* deference. *Gomez v. Campbell-Ewald Co.*, 768 F. 3d 871, 877-79 (9th Cir., 2014), *aff'd*, 136 S.Ct. 663 (2016).

The FCC further instructed that federal courts should turn to the federal common law of agency, and that vicarious liability under the TCPA could be established by "a broad range of agency principles, including not only formal

agency, but also principles of apparent authority and ratification." *In re DISH Network, LLC*, 28 F.C.C. Rcd. 6574, 6584, *see also*, *Thomas v. Taco Bell Corp*., 582 Fed.Appx. 678, 679 (9th Cir., 2014) (unpublished).  The Supreme Court also traditionally applies a broad range of agency liability: "In determining whether a hired party is an employee under the general common law of agency, we have traditionally looked for guidance to the Restatement of Agency." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 n.31 (1989).  Under the Restatement there are three kinds of authority: actual authority, apparent authority, and implied or express ratification after the fact.  Restatement (Third) of Agency §§ 2.01, 3.01, 4.01(Am. Law Inst. 2006).  Capital Alliance is liable under any of these types of agency.

"An agent has actual authority to take action designated or implied in the principal's manifestations to the agent and acts necessary or incidental to achieving the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives when the agent determines how to act."  Restatement (Third) of Agency §§ 2.02.  It is undisputed that Capital Alliance Group hired Message Communication to make prerecorded calls.  Capital Alliance Group did not express to Message Communication any requirement of TCPA-compliance in transmitting its calls.[2]   Therefore, Message Communications was merely acting in the scope of their actual authority from Capital Alliance Group.

"Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."  Restatement (Third) of Agency §§ 2.03.  As

---

[2] Capital Alliance Group has no written contract with Message Communications to evidence a TCPA compliance requirement.  [Charanvattanakit 2017 Depo, p. 74 ln. 24 – p. 75 ln. 3] Mr. Charanvattanakit admits he did not recall any such term being material or discussed.  [Charanvattanakit 2017 Depo, p. 76 ln. 1 – 9;p. 74 ln. 24 – p. 75 ln. 3; p. 87 ln. 21- p. 88 ln. 3] Mr. Charranvattanakit only states that at the time of the deposition long after the calls were made that he hoped or believed but did not know Message Communications was making TCPA compliant calls. [Charanvattanakit 2017 Depo, p. 45 ln. 2-5; Charanvattanakit 2014 Depo, p 32 ln 24 – p 34 ln 4].

Plaintiff's Partial Motion for Summary Judgment – Points & Authorities

stated above, if a recipient of the prerecorded call pressed the buttons to get through the prerecorded menu they would be connected to a Capital Alliance sales representative.  Therefore, a third party call recipient like Mr. Moser would have no choice other than to believe Message Communications was acting on behalf of Capital Alliance Group since the third party would never even know during the call that anybody other than Capital Alliance Group was on the line.

"A person ratifies an [prior] act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents."  Restatement (Third) of Agency §§ 2.03(2).  Capital Alliance Group paid Message Communications to transmit prerecorded messages not once but twice, so they clearly knew what Message Communications was doing after the first payment and manifested assent to the prior acts by making a second payment.  [Charanvattanakit 2017 Depo, p. 76 ln 18– p 77]. When Capital Alliance Group received informal complaints and then was sued for illegal marketing, Mr. Charanvattanakit testified that he, as CEO, thought the complaints were "crazy" and did not make any attempt to contact or discuss them with Message Communications. [Charanvattanakit 2017 Depo, p 45 ln 2-5 Charanvattanakit 2014 Depo, p. 32 ln. 24 – p. 34 ln. 4 ].  Capital Alliance clearly ratified Message communications making of the calls after the fact by both their conduct and failure to check up even after being formally sued.

Furthermore, even the case law from the trial court decisions against DISH Network after the FCC opened agency liability shows similar facts to those in our case.  In *Krakauer v. Dish Network, LLC*, No. 2017 WL 2242952 (M.D.N.C. 2017), the trial court ruled that Dish Network, after receiving complaints, made no effort to determine if their agents were complying with the TCPA and "repeatedly looked the other way".  In *United States of America et al. v. Dish Network LLC*, 2017 WL 2427297, *135 (C.D. Ill. 2017)  (DOJ and state AG action), the trial court ruled that, "Dish's reckless decision to use anyone with a call center without

any vetting or meaningful supervision demonstrates a disregard for the consuming public." For all the foregoing reasons, the uncontested evidence shows that Message Communications was the agent of Capital Alliance Group, whose is liable for making the calls.

### 2) The calls used a prerecorded voice.

Capital Alliance, though its CEO, Mr. Charanvattanakit, admits that he knew Message Communications would make prerecorded phone calls for Capital Alliance. [Charanvattanakit 2017 Depo, P 76 ln 5 -10]. Mr. Moser in fact heard a pre-recorded voice when he answered the alleged calls from Capital Alliance Group. [Decl Moser ¶26,30, 33,35]. The uncontested facts are clear.

### 3) The calls were made to a number assigned to a cellular telephone service.

Mr. Moser testifies that the phone number on which he received the calls, (858) 627-4190, is a cellular telephone assigned to him by his cellular telephone carrier. [Decl. Moser ¶ 25]. No evidence contradicts this fact.

### D. Plaintiff's Summary Judgment Against Capital Alliance Group on the Sixth Cause of Action (TCPA Violation – Prerecorded Calls – Blocked Caller ID)

The Code of Federal Regulations relevant to the TCPA requires that any "person or entity that engages in telemarketing [] must transmit caller identification information." 47 C.F.R. § 64.1601(e). That Caller ID information must include the phone number and, if possible, the name of the caller or seller on whose behalf the caller is working, and Caller ID cannot be blocked. 47 C.F.R. § 64.1601(e)(1-2). Therefore, the uncontested evidence for a violation must show that Defendant:

1) was engaged in telemarketing, and

a) did not transmit accurate Caller ID information, or

b) blocked the transmission of Caller ID information

The statutory defenses must include all statutory defenses to the underlying telemarketing violation since the call must constitute telemarketing under the TCPA, and there is a further exemption for all tax exempt non-profits.  47 C.F.R. § 64.1601(e)(3).

As a threshold matter, Defendants in their Motion to Dismiss the Second Amended Complaint argue based on one District Court opinion out of Maryland that there is no private right of action for violations of 47 C.F.R. 64.1601(e). [Defendants' Motion To Dismiss, p. 13, ln. 11 –  p. 14 ln. 21].  Defendants are incorrect as to 47 C.F.R § 64.1601(e) and their case is to no avail since it merely makes guesses as to the interconnection of the TCPA statute and its attendant regulations, while the regulatory history shows otherwise.

Subsections (b) and (c) of the TCPA each separately grant a private right of action for violations of that subsection or the regulations prescribed under that subsection.  47 U.S.C. § 227(b)(3)(A) and (c)(5)(A).  Thus, to have a private right of action the regulation at issue must have been promulgated under subsection (b) or (c) of the TCPA.

The FCC does not usually identify which specific TCPA subsection or later TCPA-amending law a regulation is promulgated under in its rulemaking orders. The federal register notices, likewise, do not identify the specific sections.  Thus courts must sometimes dive into the murky waters of divining the FCC's intent from context in the orders. However, the genesis of 47 C.F.R 64.1601(e) is quite clear compared to some other regulations, so no such analysis is needed.

In the FCC's first Report and Order implementing the TCPA, there was discussion of what the FCC might do under the broad latitude of subsection (c). *Report and Order, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8756-62, at para. 7-17 (1992) ("*FCC*

*1992 Order*").  The entirety of Section B of the *FCC 1992 Order* discusses how to implement TCPA subsection (c), the first authority cited in footnote 7 is TCPA subsection (c), and no other citation is made to any other TCPA subsection. *Id*. Caller ID was discussed and the FCC considered having a special area code for telemarketers, however these ideas were rejected for a number of reasons, including the lack of universal adoption of SS7 switching technology at that time, which was necessary for Caller ID. *Id*., 7 FCC Rcd. at 8761-62, at para. 16-17. Also discussed but rejected back in 1992 was the creation of a Do Not Call Registry. *Id*., 7 FCC Rcd. at 8761, at para. 14-15.

In 2003 Congress revisited the idea of Do Not Call Registry and ordered the FTC and FCC to make one and the FCC implemented its Do Not Call rules in the *FCC 2003 Order*.[3]  The *FCC 2003 Order* makes a narrow rule that **only telemarketers** must transmit Caller ID and enacted it as 47 C.F.R. §64.1601(e). *FCC 2003 Order*, 18 FCC Rcd. 14014, 14118-23, at para.173-184; *see also*, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 71 FR 75122, 012006 WL 3623623 (December 14, 2006) (recording amendment). The very first sentence of the Caller ID section of the *FCC 2003 Order* refers back to the prior *FCC 1992 Order* discussion of Caller ID, which was had under TCPA subsection (c).  *FCC 2003 Order* at para.173. The entire Caller ID section of the *FCC 2003 Order* is replete with references back to TCPA subsection (c), which is no surprise given that almost the entirety of the order is concerned with creating and enforcing the Do Not Call Registry envisaged under TCPA subsection (c).  So, the context would strongly indicate that the Caller ID requirement of 47 C.F.R. §64.1601(e) is promulgated pursuant to TCPA subsection (c).

But the even stronger argument is that there is no other subsection of the TCPA that 47 C.F.R. §64.1601(e) could possibly be promulgated under **because**

---

[3] *See also*, Do-Not-Call Implementation Act of 2003, Pub.L. 108–10, codified at 15 U.S.C. § 6101 et. seq.

**no other subsection is limited to telemarketing**.  The TCPA requires all artificial or prerecorded voice calls to state the identity of the caller and their phone number during the message in subsection (d), which has no private right of action.  But that requirement is made on literally all artificial or prerecorded voice, not limited to telemarketing calls and the FCC would be far exceeding the scope of its Congressional authority if they limited a general prohibition required by statute to just a tiny subsection of calls.[4]  The TCPA also includes a subsection (e) having to do with Caller ID, but that is explicitly promulgated pursuant to the Truth in Caller ID Act, which was enacted in 2009, years after the *FCC 2003 Order*, which created 47 C.F.R. § 64.1601(e), and is therefore not the source.  The only possible source is the TCPA subsection (c), because that is the only subsection or Caller ID-related statute dealing exclusively with telemarketing calls.  All of the other TCPA subsections and Caller ID-related statutes go far beyond the narrow world of telemarketing calls.  So, the only Congressional grant of authority the FCC could promulgate 47 C.F.R. § 64.1601(e) under is subsection (c) of the TCPA, which orders the FCC to, "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations".  47 U.S.C. § 227(c).

Now, moving on to the elements of the violation, the undisputed evidence discussed above shows that Capital Alliance Group is liable for the illegal prerecorded calls to Plaintiff Moser.  [See Section IV.C, above].  It is further

---

[4] The failure to see that TCPA subsection (d) applies to all prerecorded calls rather than being limited to telemarketing  is the small but important  mistake made by Maryland District Court in the case Defendants cite in their Motion to Dismiss, *Worsham v. Travel Options, Inc*., 2016 WL 4592373, *4 (D. Md. 2016).  The mistake is understandable since the Maryland District Court spends most of its analysis on 47 C.F.R. §64.1200(b)(1-2) rather than 47 C.F.R. §64.1601(e).  While the Court's logic regarding 47 C.F.R. §64.1200(b)(1-2) might be persuasive other courts have come to other conclusions using the same textual analysis method.  *See, e.g., Charvat v. Echostar Satellite*, LLC, 621 F.Supp.2d 549, 558 (S.D. Ohio 2008*), remanded on other grounds,  Charvat v. Echostar Satellite*, LLC 630 F.3d 459 (6th Cir., 2010) (one of the cases on referral that led to the FCC's DISH Network order cited elsewhere herein).  Plaintiffs obviously agree with these other courts, but it is irrelevant in this case since 47 C.F.R. §64.1601(e) covers the same ground and is on firmer footing since TCPA subsection (c) and  47 C.F.R. §64.1601(e) are the only statute sections and code that are limited to telemarketing calls only.

undisputed that the calls did not show Caller ID.  [Decl. Moser ¶ 24, 26-27, 30, 33, 35.]  Thus, it is undisputed that the telemarketing calls to Mr. Moser did not transmit Caller ID information as required by 47 C.F.R 64.1601(e).

## E)  Personal Liability of Defendant Corporate Officers Narin Charanvattanakit and Mark Mendoza

The Federal Communications Act of 1931, of which the TCPA is a part, puts primary liability on the personal officer or actor and only reaches corporate liability through a simplified version of *respondeat superior*.  "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user <u>as well as of that person</u>."  47 U.S.C. § 217 [emphasis added].  "[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly . . . violate the TCPA should not escape liability solely because they are corporate officers."  *Texas v. American Blast Fax, Inc*., 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001). "Officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act. . . [T]he courts found [individual liability] based on well-developed facts of the defendant's participation such as defendant being the sole stockholder, electing the board of directors, standing to benefit from the infringement, being the incorporator, promoting the infringing product, and designing the infringing product."  *Monsanto Co. v. Hill*, 2004 WL 4996339, *8 (E.D. Mo., 2004) (unpublished).

Mr. Charanvattanakit is the CEO of Capital Alliance Group and had personal participation in and personally ordered and authorized all of the illegal conduct above. [Charanvattanakit 2017 Depo, p. 33, ln. 9 – 14; p. 34 ln. 1-6 p. 35 ln. 12-14;, p. 94 ln. 1 -12]. Mr. Charanvattanakit was the person who hired Messaging Communications and Absolute Fax to operate on behalf of Capital Alliance Group. [Charanvattanakit 2017 Depo, p. 33, ln. 9 – 14; p. 34 ln. 1-6 p. 35 ln. 12-14; p. 94 ln. 1 -12]. He is the officer who paid these two companies for their services. [Charanvattanakit 2017 Depo, p. 41 pg 21- p. 42 ln 12; p. 76 ln 18– p 77]. He knew that absolute fax was sending unsolicited facsimiles. [Charanvattanakit 2017 Depo, pg 33 ln 6 – pg 35 ln 11]. Mr. Charanvattanakit hired Ring Central, which forwarded the calls to every toll free number on the fax ads to Capital Alliance Group. [Decl. Prato, Exhibit C, Deposition of Christina Duncan ("Duncan Depo") p. 42 ln 13-19; Expert Report of Jeffery A. Hanson; Decl. Prato ¶8-9)]. Even if he did not know about the TCPA violations originally, after he was put on notice by complaints and lawsuits, he did nothing to stop Absolute Fax and Message Communications. [Charanvattanakit 2017 Depo, p 36, ln 16-19; p 139 ln 12 - 23; Duncan Depo, p 22 ln 17 -20]. In fact, Capital Alliance Group benefited from these fax ads and telemarketing calls by getting leads and clients. [Charanvattanakit 2017 Depo, p. 124 ln. 5 – p. 125 ln .18; p. 140 ln. 17 -21]. Based on the above, Narin Charanvattanakit had personal participation in and personally authorized all of the illegal prerecorded calls and unsolicited fax ads and therefore is liable for these corporate actions of Capital Alliance Group.

Mark Mendoza is the CFO of Capital Alliance. [Decl. Prato, Exhibit D, Deposition of Mark Mendoza ("Mendoza Depo") p. 7, ln. 17-21]. While not engaging in the conduct with the same directness of Narin Charanvattanakit, Mark Mendoza should none the less be found liable for the illegal actions of Capital Alliance.  As CFO, Mr. Mendoza is responsible for the corporate finances. [Mendoza Depo, p. 7 ln. 18- p. 8 ln. 5 ]. However, he willfully looked the other

way while his partner, Mr. Charanvattanakit used cash payments though western union to pay for illegal advertising. [Charanvattanakit 2017 Depo, p. 106 ln. 13 –p. 108 ln. 6]. There is no evidence of Mark Mendoza questioning these highly irregular overseas cash wire transfers. [Mendoza Depo, p 17 ln 22– p 18 ln 23]. Mr. Mendoza also took no action to discover how Mr. Charanvattanakit was using advertising after costly lawsuit piled upon lawsuit. [Charanvattanakit 2017 Depo, p. 106 ln. 13 – p. 108 ln. 6]. Mr. Mendoza is now trying to claim ignorance, but that ignorance could only be due to intentional omission to act in accordance with his duties. *See*, 47 U.S.C. §217, *supra* (act or omission of any person).  As mentioned above, "repeatedly look[ing] the other way" has never been a defense to the TCPA. *Krakauer v. Dish Network, LLC*, No. 2017 WL 2242952 (M.D.N.C. 2017). This is a clear case of willful ignorance, omission to act and failure of his duties as CFO of Capital Alliance Group and therefore Mark Mendoza should be liable for these failures.

### F) Plaintiff Is Entitled To Statutory Damages For All The Violations Herein

For the First Count, subsection (b)(3) of the TCPA gives plaintiffs a private right of action to pursue statutory damages set at $500 for each violation, "of this subsection or the regulations prescribed under this subsection."  Each transmission of an unsolicited facsimile advertisement to Plaintiffs was such a violation.  For the Second Count, California law gives plaintiffs a private right of action to pursue statutory damages for each unsolicited fax ad set at $500, which is specifically in addition to any TCPA damages. Cal. B&P §17538.43(b)(2).

For the Third Count, subsection (b)(3) of the TCPA again gives plaintiffs $500 statutory damages for each unsolicited prerecorded telemarketing call.  For the Sixth Count, subsection (c)(5) of the TCPA gives plaintiffs a private right of action to pursue statutory damages set at $500 for each violation, "of the regulations prescribed under this subsection."  So, each failure to transmit Caller

ID in the unsolicited prerecorded telemarketing calls is a second violation.  The two subsections clearly lead to two damage awards since each subsection gives a separate private right of action for violations of "this subsection".  *See*, *also*, *Charvat v. Ryan*, 858 N.E.2d 845, 168 Ohio App.3d 78, 2006 Ohio 3705 (Ohio App., 2006).

Since each of the Counts addressed in this Partial Motion For Summary Judgment carry simple statutory damages, there is no need for a trier of fact to make any factual determinations as to the amount of damages.[5]

## G)  Plaintiff is Entitled To "Willful" or "Knowing" Trebled Damages

Each of the laws at issue in this motion provide for trebled damages for willful and knowing violations of the TCPA and California code.  47 U.S.C. § 227(b)(3), (c)(5); Cal. B&P §17538.43(b)(2). While the TCPA does not define any standard for whether a violation was "willfully or knowingly" made, other parts of the Federal Communications Act of 1931, which the TCPA amends, do define these terms as intent only to do the act done, not intent to violate the law: "The term "willful", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation…"  47 U.S.C. § 312(f) (providing for sanctions for improper obtaining or use of a radio transmission license). This comports with standard definitions like Black's Law Dictionary: "Proceeding from a conscious motion of the will; intending the result which actually conies to pass . . . In common parlance, 'willful' is used in the sense of 'intentional,' as distinguished from 'accidental' or 'involuntary.'" Black's Law Dictionary (2nd ed. 1910) (available at http://thelawdictionary.org/willful/).

---

[5] A chart showing the specific amount of damages for each plaintiff by violation may be found in the accompanying Declaration of Justin Prato at ¶12.

Therefore, Plaintiff suggests that the standard for "willful" or "knowing" does not rise to the level of *scienter*, or knowledge of the wrongness of the act, merely that the caller deliberately and intentionally meant to fax or call the recipient.  "Although neither the TCPA nor the FCC regulations define the terms 'willfully or knowingly', courts have generally interpreted willfulness to imply only that an action was intentional." *Sengenberger v. Credit Control Servs*., 2010 WL 1791270 (N.D. Ill., 2010), *citing*, *Smith v. Wade,* 461 U.S. 30, 41 n. 8 (1983); *see also*, *Charvat v. Ryan*, 116 Ohio St. 3d 394, 2007 Ohio 6833, 879 N.E.2d 765, 770-771 (Ohio 2007) (knowledge of the law not required to find either a willful or knowing violation).  This interpretation comports with the rest of the TCPA-related regulations that allow exemptions from liability for simple mistakes or the occasional call that might accidentally slip through proper compliance procedures. *See*, *e.g.*, 47 C.F.R. § 64.1200(c)(2)(i) (safe harbor for companies that can prove proper Do-Not-Call List compliance procedures).

In this case Mr. Charanvattanakit, and therefore Capital Alliance Group, knew it was causing the illegal faxes and prerecorded calls to be transmitted to the general public.  [Charanvattanakit 2017 Depo, p .44 ln. 19 – p. 45 ln. ; p. 76 ln 5 - 10]. Narin Charanvattanakit paid Absolute Fax and Message Communications to send faxes and make calls to the general public. [Charanvattanakit 2017 Depo, p. 41 pg 21- p. 42 ln 12; p. 76 ln 18– p 77]. Mark Mendoza knew of the illegal public marketing or, at best, intentionally kept himself willfully ignorant of it, and did nothing to stop it. [Charanvattanakit 2017 Depo, p. 106 ln. 13 – p. 108 ln. 6; Mendoza Depo, p. 17 ln. 22– p. 18 ln. 23]. All of the faxes and calls were advertisements to the general public, not to any one particular recipient and therefore were not accidental transmissions to the wrong party.  They all reached their intended recipient, the general public.  Since the officers and co-owners of Capital Alliance Group were acting on behalf of Capital Alliance Group in having the calls and fax ads made, Capital Alliance Group transmitted the calls and fax

ads willfully and knowingly.  Therefore, the Court may, in its discretion, award the trebled damages allowed by statute.

## V. CONCLUSION

For all the foregoing reasons, Plaintiffs Ken Moser, Artie Katz and DCM Properties, Inc., request that the Court grant them summary judgment against Defendants Capital Alliance Group, Narin Charanvattanakit and Mark Mendoza as to liability and damages on Counts One, Two, Three and Six of the Second Amended Complaint.  These Plaintiffs request judgment be rendered in the amounts detailed in the Separate Statement of Undisputed Facts, Appendix One.

DATED: August 2, 2017                               **PRATO & REICHMAN, APC**


                                                     _/s/ Christopher J. Reichman_____
                                                     By: Christopher J. Reichman, Esq.
                                                     **Prato & Reichman, APC**
                                                     Attorneys for Plaintiffs