Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| DAVID MEYER, et. al. | Case No.: 15-CV-2405-WVG |
|---|---|
| Plaintiff, | **PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED FACTS, IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS CAPITAL ALLIANCE GROUP, CAPITAL ALLIANCE PARTNERS, NARIN CHARANVATTANAKIT, & MARK MENDOZA** |
| vs. | |
| CAPITAL ALLIANCE GROUP, et. al., | |
| Defendants. | |
| | Hon. William V. Gallo |
| | Hearing Sept 18, 2017, 2:00 pm |

## INTRODUCTION

Pursuant to the Federal Rules of Civil Procedure Rule 56 and Local Rule 7.1.f.1, Plaintiffs  Kenneth Moser, Arnie Katz and DCM Properties, Inc., hereby submit this Separate Statement of Undisputed Facts in support of their Motion for

- 1 -

PLAINTIFF SEPARATE STATMENT

Partial Summary Judgment.  These facts establish that Plaintiffs are entitled to summary adjudication for their first, second, third and sixth causes of action and the statutory and willful damages for each cause.

SEPARATE STATEMENT OF UNDISPUTED FACT

Plaintiff contends there is no genuine issue as to the following material facts:

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. In this case Capital Alliance, though it's Chief Executive Officer ("CEO"), Narin Charanvattanakit hired a company called Absolute Fax to send facsimile advertisements on its behalf. | Declaration of Justin Prato, Exhibit A, Deposition of Narin Charanvattanakit taken on February 28, 2017 ("Charanvattanakit 2017 Depo"), p. 33, ln. 9 – 14; p. 34 ln. 1-6 p. 35 ln. 12-14) |
| 2. Mr. Charanvattanakit agrees that he knew they would send faxes. | Charanvattanakit 2017 Depo, p. 44 ln. 19 – p. 45 ln. 5 |
| 3. Mr. Charanvattanakit admits that Absolute Fax sent these fax ads. | Charanvattanakit 2017 Depo, p. 33 ln. 6 – p. 35 ln. 11 |
| 4. Mr. Charanvattanakit does not recall the specifics of his conversation with Absolute Fax as to how many "leads" were to be generated by fax. | Charanvattanakit 2017 Depo, p. 40 ln. 4-40 |
| 5. Mr. Charanvattanakit admits that he only attempted to contact Absolute fax once, by phone, and when he did not reach anyone he did not try again and did nothing else to stop the faxes. | Charanvattanakit 2017 Depo, p. 36, ln. 16-19; p. 139 ln. 12 - 23 |

| | | |
|---|---|---|
| 1-3 | 6. Mr. Charanvattanakit also paid Absolute fax in cash, by Western Union, in the amounts of $21,000 and $2000. | Charanvattanakit 2017 Depo,, p. 41 ln. 21- p. 42 ln. 12 |
| 4-6 | 7. Mr. Charanvattanakit has no recollection of any of the terms of his agreement with Absolute Fax. | Charanvattanakit 2017 Depo, p. 44 ln. 12 -16 |
| 7-11 | 8. Mr. Charanvattanakit admits he did not discuss TCPA compliance with Absolute fax. | Declaration of Justin Prato, Exhibit B, Deposition of Narin Charanvattanakit taken on May 19, 2014 ("Charanvattanakit 2014 Depo", p. 33 ln. 13 – 16. |
| 12-18 | 9. Mr. Charanvattanakit never asked Absoulte Fax how they were contacting people or what they were saying, he never reviewed the faxes sent, he did not ask to receive the faxes sent, and he did not keep track of the "leads" that were generated. | Charanvattanakit 2017 Depo, p. 45 ln. 2 -18 |
| 19-21 | 10. Mr. Charanvattanakit relied solely on trust on how he would be dealing with Absolute Fax | Charanvattanakit 2017 Depo, Dan p. 58 ln. 2 - 9 |
| 22-28 | 11. Capital Alliance Group's operations manager, Ms. Christina Duncan would received complaints from clients about faxes and nothing was done. | Charanvattanakit 2017 Depo, p. 22 ln. 17 -20 |

- 3 -

PLAINTIFF SEPARATE STATMENT

| # | Statement | Citation |
|---|---|---|
| 12. | Mr. Charanvattanakit has not provided any terms of the agreement with Absolute Fax in writing, and does not recall the specific terms | Charanvattanakit 2017 Depo, p. 93 ln. 6 - 13 |
| 13. | Even when Capital Alliance, though Mr. Charanvattanakit, became aware of complaints concerning the pre-recorded calls nothing was done to stop them. | Charanvattanakit 2014 Depo, p. 62 ln. 14 p. 63 ln. 9; Charanvattanakit 2017 Depo, p. 138 ln. 11– p. 139 ln. 7 |
| 14. | Capital Alliance, though its CEO, Mr. Charanvattanakit, admits it hired a company called Message Communications to make calls on its behalf. | Charanvattanakit 2017 Depo, p. 94 ln. 1 -12 |
| 15. | Mr. Charanvattanakit agrees that he knew Message Communications would make prerecorded phone calls for Capital Alliance. | Charanvattanakit 2017 Depo, p. 76 ln. 5 -10 |
| 16. | Mr. Charanvattanakit admits Capital Alliance paid Message Communications to make the calls twice. | Charanvattanakit 2017 Depo, p. 76 ln. 18– p. 77 ln. 9 |
| 17. | Capital Alliance admits that Message Communications did make the calls. | Charanvattanakit 2017 Depo, p. 76 ln. 5-7 |
| 18. | Capital Alliance Group has no written contract with Message Communications to evidence a TCPA compliance requirement. | Charanvattanakit 2017 Depo, p. 74 ln. 24 – p. 75 ln. 3. |

| | | |
|---|---|---|
| 1 2 3 4 5 | 19. Mr. Charanvattanakit admits he did not recall any such term being material or discussed. | Charanvattanakit 2017 Depo, p. 76 ln. 1 – 9; p. 74 ln. 24 – p. 75 ln. 3; p. 87 ln. 21- p. 88 ln. 3 |
| 6 7 8 9 10 | 20. Mr. Charanvattanakit only states that at the time of his deposition, long after the calls were made, that he hoped or believed Message Communications was making TCPA compliant calls | Charanvattanakit 2017 Depo, p. 45 ln. 2-5; Charanvattanakit 2014 Depo, p 32 ln 24 – p 34 ln 4 |
| 11 12 13 14 15 16 17 18 | 21. When Capital Alliance Group received informal complaints and later was sued for illegal marketing, Mr. Charanvattanakit testified that he, as CEO, thought the complaints were "crazy" and did not make any attempt to contact or discuss them with Message Communications. | Charanvattanakit 2017 Depo, p 45 ln 2-5 Charanvattanakit 2014 Depo, p. 32 ln. 24 – p. 34 ln. 4 |
| 19 20 | 22. It is Christina Duncan's job to deal with Better Business Bureau complaints. | Charanvattanakit 2017 Depo, p. 117 ln. 22 – p 118 ln 4 |
| 21 22 23 24 | 23. Mr. Charanvattanakit hired Ring Central, which forwarded the calls to every toll free number on the fax ads to Capital alliance Group. | Decl. Prato ¶8-9; Expert Report of Jeffery A. Hanson; Decl. Prato, Exhibit C, Depo,sition of Christina Duncan ("Duncan Depo," p. 42 ln 13-19 |
| 25 26 27 | 24. Capital Alliance benefited from these fax ads and telemarketing calls by getting leads and clients. | Charanvattanakit 2017 Depo, p 124 ln 5 – p 125 ln 18, p. 140 ln 17 -21 |

28

| | | |
|---|---|---|
| 1-3 | 25. Mark Mendoza is the Chief Financial Officer ("CFO") of Capital Alliance | Decl. Prato, Exhibit D, Deposition of Mark Mendoza ("Mendoza Depo,") p. 7 ln. 17-21 |
| 4-5 | 26. As CFO Mr. Mendoza is responsible for the corporate finances. | Mendoza Depo, p. 7 ln. 18- p. 8 ln. 5 |
| 6-10 | 27. Mr. Mendoza willfully looked the other way while his partner, Mr. Charanvattanakit used cash payments though western union to pay for illegal advertising. | Charanvattanakit 2017 Depo, p. 106 ln. 13 –p. 108 ln. 6 |
| 11-12 | 28. There is no evidence of Mr. Mendoza questioning these payments. | Mendoza Depo, p. 17 ln. 22– p. 18 ln. 23 |
| 13-16 | 29. Mr. Mendoza also took no action to discover how Mr. Charanvattanakit was using advertising after lawsuit piled upon lawsuit | Charanvattanakit 2017 Depo, p. 106 ln. 13 – p. 108 ln. 6 |
| 17-19 | 30. Capital Alliance was still in the business of using fax advertisements in August 4, 2014. | Duncan Depo, p. 19 ln 5 – p. 20 ln. 1 |
| 20-24 | 31. It is clear from the face of the faxes that they advertise the commercial availability of loan brokerage services. | Declaration of Kenneth Moser ("Decl. Moser") ¶8, Exhibit A.  Declaration of Arnie Katz ("Decl. Katz") ¶14-15, Exhibit A, Declaration of David Meyer ("Decl Meyer") ¶6-7, Exhibit A |
| 25-28 | 32. Plaintiffs Arnie Katz and Ken Moser received the fax ads using an electronic fax server. | Decl. Moser ¶2-5 , Decl. Katz ¶8-12 |

| | | |
|---|---|---|
| 33. None of the Plaintiffs solicited or requested these fax ads in any way shape of form. | Decl. Moser ¶9 , Decl. Meyer ¶8 , Decl. Katz ¶16 | |
| 34. Plaintiff DCM Properties, Inc. received the fax ads on a traditional paper and ink fax machine. | Decl. Meyer ¶4-5 | |
| 35. Mr. Ken Moser received four prerecorded phone calls to his cell phone. | Decl. Moser ¶ 24, 30, 33, 35 | |
| 36. While the Caller ID was falsified and no company name was used in the prerecorded portion of the call to try to evade liability, Mr. Moser played along with two of the calls and after answering a few prerecorded "push 1 if you are interested" type automated queries, he was connected to a sales representative working for Capital Alliance Group. | Decl. Moser ¶ 24, 26-27, 30, 33, 35. | |
| 37. After the calls wherein Mr. Moser faked interest to determine the identity of the caller, Capital Alliance Group sent him follow up e-mails identifying themselves as the caller. | Decl. Moser ¶ 26-29, Exhibit D | |
| 38. One of those e-mails even states that it is from the desk of Defendant Mark Mendoza. | Decl. Moser ¶ 38-39, Exhibit E | |

- 7 -

PLAINTIFF SEPARATE STATMENT

| | |
|---|---|
| 39. Mr. Moser testifies that the phone number on which he received the calls, (858) 627-4190, is a cellular telephone assigned to him by his cellular telephone carrier | Decl. Moser ¶ 25 |
| 40. While such services usually use electronic files, there is no doubt they have the capacity to print to paper, and were even used to do so in this case. | [Decl. Moser ¶5-6, Decl. Katz ¶12] |
| 41. Mr. Moser received 6 unsolicited fax advertisements | Decl. Moser ¶7-9 |
| 42. Mr. Katz received 41 unsolicited fax advertisements | Decl. Katz ¶14-16 |
| 43. DCM Properties, Inc. received 7 unsolicited fax advertisements | Decl. Meyer ¶6-8 |
| 44. Mr. Moser received 4 unsolicited prerecorded phone calls to his cell phone. | Decl. Moser ¶23-36 |

DATED: August 2, 2017              **PRATO & REICHMAN, APC**


  /s/ Christopher J. Reichman_____
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiffs