Christopher J. Reichman  SBN 250485
chrisr@prato-reichman.com
Justin Prato, SBN 246968
justinp@ prato-reichman.com
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971

Attorney for all Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MEYER, et. al. <br><br> Plaintiff, <br><br> vs. <br><br> CAPITAL ALLIANCE GROUP, et. al., <br><br> Defendants. | Case No.: 15-CV-2405-WVG <br><br> **OBJECTIONS TO DEFENDANTS' UNTIMELY MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6), AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION IN THE ALTERNATIVE** <br><br> **Hon. William V. Gallo** <br> **Hearing Sept 18, 2017, 2:00 pm** |

## OBJECTION #1

Defendants are not allowed to file a second post-answer motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) or 12(b)(1).  There are two separate bars to such a motion.  Rule 12(b) itself states, "A motion asserting any of these [12(b)] defenses must be made before pleading if a responsive pleading is allowed."  Furthermore, Rule 12(g)(2) states, "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make

another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(b) itself requires filing before an Answer is made, and Rule 12(g)(2) disallows filing successive motions to dismiss.

The operative Second Amended Complaint ("SAC") was filed in San Diego Superior Court on August 3, 2015. [Dckt. No. 1-1]. The SAC named a new defendant and, after she was served on October 12, 2015, Defendants removed the case to this District Court on October 21, 2015. [Dckt No. 1]. The moving Defendants filed a previous motion to dismiss in this District Court, "pursuant to FRCP 12(b)(6)", on March 10, 2016. [Dckt. No. 8, p. 2, ln. 7 (page and line numbers hereinafter represented as '2:7')]. This prior motion to dismiss was timely filed before any Answer. This Court denied the prior motion to dismiss on April 4, 2016. [Dckt. No. 12]. The moving Defendants thereafter filed an Answer to the SAC. [Dckt. No. 14]. Defendants have filed the instant motion, "under Federal Rule of Civil Procedure 12(b)(6) . . . and 12(b)(1). [Second Motion to Dismiss Second Amended Complaint, Dckt. No. 48 (hereinafter "2nd MTD"), 2:10-13].

A Rule 12(b) motion may only be made prior to filing and Defendants are barred from filing a second Rule 12(b) motion to dismiss by Rule 12(g)(2). Post answer Rule 12(b) motions are regarded as "untimely" and not allowed. *Elvig v. Calvin Presbyterian Church*, 375 F3d 951, 954 (9th Cir. 2004). Plaintiffs, therefore object to the entirety of the instant late-filed Rule 12(b) motion and request that it be stricken or dismissed in its entirety.

Technically, the Ninth Circuit has held that, "we should generally be forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion" and may sometimes review it as if it were a motion for judgment on the pleadings made under Rule 12(c)—while keeping in mind that such a determination is more problematic than a Rule 12(b) motion since leave to amend

is not available under Rule 12(c). *In re Apple Iphone Antitrust Litigation*, 846 F.3d 313, 317-20 (9th Cir. 2017). While a District Court should not entertain a late-filed Rule 12(b) motion after being made aware of the timing defect, the possibility that it will be entertained and allowed on appeal counsels caution in resting on this objection. Therefore, while not waiving this objection in any way, Plaintiffs' will provide opposition argument below to be considered only if this objection is denied.

## OBJECTION #2

Defendants removed this case from state court to federal court and now in the instant motion to dismiss try to attack the jurisdiction of this court to decide the case. Defendants have either made a grave error in filing this motion or they are explicitly admitting they falsely asserted that this Court had jurisdiction when they unilaterally removed the case.

In their Notice of Removal, Defendants averred that, "[t]his Court has jurisdiction of this action under federal question jurisdiction". [Dckt. No. 1, 1:27, see also 3:5-20]. In the instant late-filed motion to dismiss, the very first argument presented, Section II.A., is entitled, "The Court Should Dismiss Plaintiffs' First Claim Because Plaintiffs Lack Article III Standing". The entire argument of this section is a frontal attack on the case or controversy standing requirements to invoke federal subject matter jurisdiction. [2nd MTD, pages 6 through 10].

Defendants have apparently forgotten that they—not Plaintiffs—were the ones who invoked this Court's federal subject matter jurisdiction. In fact, Plaintiffs filed a motion to remand the case back to state court, which was denied in no small part based on these jurisdictional averments of Defendants. [Dckt. No. 3, 7]. Defendants cannot invoke federal court subject matter jurisdiction out of one side of their mouth and then attack it out of the other. Either Defendants have mistakenly attacked the jurisdiction they themselves invoked and the entire

argument should be stricken, or they have admitted that their Notice of Removal was falsely filed for an improper purpose like delay, and the Rule 11 sanctions should be imposed for all of Plaintiffs attorney's fees and costs in these federal proceedings before remanding the entire case back to the state court, which undoubtedly has jurisdiction.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447, *see also*, *Mocek v. Allsaints USA Ltd*., --- F. Supp. 3d ---, 2016 WL 7116590 (Dec. 7, 2016) (remanding after defendants removed then challenged standing, and awarding $58,000 in attorney fees).  However, the Court should note that pursuant to Objection #1, above, the current late filed motion to dismiss is not allowed and could only possibly be considered as a motion for judgment on the pleadings under Rule 12(c) and the only relief available under that motion is judgment, not remand. While the Court could conceivably deny judgment and *sua sponte* order remand, this problem just further shows why the Court should sustain Objection #1 and strike the entire motion to dismiss as improperly timed and ill-conceived at best.

For the foregoing reasons Plaintiffs object to the entirety of the Second Motion To Dismiss' first argument section, Section II.A, and request it be stricken. Out of an abundance of caution and without waiving this objection in any way, Plaintiffs argue that they do possess standing under the recent *Spokeo* decision in the alternative merits opposition below.

/ / /

/ / /

/ / /

/ / /

# OPPOSITION TO MOTION TO DISMISS

## (in the alternative if Objection #1 and/or #2 is not sustained)

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . 10

II. STANDARD OF REVIEW . . . . . . . . 11

III. ARGUMENT . . . . . . . . . . 11

    A. Plaintiffs Do Not Lack Article III Standing . . . . 11

    B. The SAC Adequately Alleges Standing For Claims Under

        B&P § 17538.43 and B&P § 17200 . . . . . 16

    C. Plaintiffs' Third Claim Is Well Pleaded . . . . . 17

    D. Plaintiffs' Sixth Claim Is Unquestionably Entitled To a Private

        Right of Action, and Since The Fourth & Fifth Claims Are

        Merely Repetitive Of The Sixth Claim, Any Motion To

        Dismiss Them Is Moot . . . . . . . 18

    E. The California Legal Remedies Act Does Not Require

        Economic Harm . . . . . . . . 21

    F. Defendants' Theory Of Consent To The Ninth and Tenth

        Claims Is Based On Their Fatal Mistake Regarding The

        Established Business Relationship Defense And Its

        Opt Out Notice Element . . . . . . 23

    G. The Cause Of Action For Conspiracy Is Only In The

        Complaint To Highlight The Agency Theories . . . 23

V. CONCLUSION . . . . . . . . . 24

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

# TABLE OF AUTHORITIES

United States Supreme Court

*Lujan v. Defenders of Wildlife*,

      504 U.S. 555, 560, 112 S.Ct. 2130 (1992)   .   .   .   .   .   11

*Mims v. Arrow Fin. Services, LLC*,

      -- U.S. --, 132 S.Ct. 740 (2012) .   .   .   .   .   .   .   12

*Spokeo, Inc. v. Robins*,

      136 S. Ct. 1540, 1548 (2016)   .   .   .   .   .   11-12, 15, 22

*Int'l Primate Prot. League v. Admin's of Tulane Edu. Fund*,

      500 U.S. 72, 89 (1991)   .   .   .   .   .   .   .   15


Circuit Courts

*Arista Records, LLC v. Doe 3*,

      604 F.3d 110, 120 (2nd Cir. 2010)   .   .   .   .   .   17

*Cafasso v. General Dynamics C4 Sys., Inc*.,

      637 F.3d 1047, 1055 n. 4 (9th Cir. 2011)   .   .   .   .   11

*Carolina Ca. Ins. Co. v. Team Equipment, Inc*.,

      741 F.3d 1082, 1086 (9th Cir. 2014)   .   .   .   .   .   17

*Dworkin v. Hustler Magazine Inc.*,

      867 F.2d 1188, 1192 (9th Cir. 1989)   .   .   .   .   .   11

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,

      896 F.2d 1542, 1550 (9th Cir.1989)   .   .   .   .   .   11

*Polo v. Innoventions International*,

      ___ F.3d. ___ (9th Cir. Aug. 18, 2016)   .   .   .   .   15

*Van Patten v. Vertical Fitness Group, LLC*,

      847 F.3d 1037, 1043 (9th Cir. 2017)   .   .   .   .   .   13, 23

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

Federal Communications Commission Orders

*Report and Order, Rules and Regulations Implementing the Telephone*

    *Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (1992)   .   .18,19

*Rules and Regulations Implementing the Telephone Consumer*

    *Protection Act of 1991*, 18 FCC Rcd. 14014 (2003)   .   .   .   19

*Rules and Regulations Implementing the Telephone Consumer Protection*

    *Act of 1991*, 71 FR 75122, 012006 WL 3623623 (2006)   .   .   .   19


U.S. District Courts

*A.D. v. Credit One Bank, N.A.*,

    2016 WL 4417077, *7 (N.D.Ill. Aug 19, 2016)   .   .   .   .   13

*Adamo v. Synchrony Bank*,

    2016 WL 3621129 (M.D. Fla. July 6, 2016)   .   .   .   .   13

*Aranda v. Caribbean Cruise Line, Inc.*,

    2016 WL 4439935, at *5 (N.D. Ill. Aug. 23, 2016) .   .   .   .   12

*ARcare v. Qiagen North American Holdings, Inc.*,

    2017 Lexis 8344 (C.D. Cal 2017)   .   .   .   .   15

*Booth v. Appstack, Inc.*,

    2016 WL 3030256, at *5 (W.D.Wash. May 25, 2016)   .   .   12

*Brodsky v. HumanaDental Insurance Co.*,

    2016 WL 5476233, *10-11 (N.D. Ill., Sept. 29, 2016)   .   .   13

*Cabiness v. Educational Financial Solutions,*

    *LLC*, 2016 WL 5791411, *5 (N.D.Cal., Sept. 1, 2016)   .   .   12

*Caudill v. Wells Fargo Home Mtg.*, Inc.,

    2016 WL 3820195, at *2 (E.D.Ky. July 11, 2016)   .   .   .   13

*Charvat v. Echostar Satellite*, LLC,

    621 F.Supp.2d 549, 558 (S.D. Ohio 2008)   .   .   .   .   20

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

*Cour v. Life360, Inc.*,

    2016 WL 4039279, at *2 (N.D.Cal. July 28, 2016) .   .   .   .   13

*Dolemba v. Illinois Farmers Insurance Company*,

    2016 WL 5720377, *3 (N.D.Ill. Sept., 30, 2016) .   .   .   .   13

*Espejo v. Santander Consumer USA, Inc*.,

    2016 WL 6037625, FN3 (N.D. Ill., Oct. 14, 2016) .   .   .   .   13

*Fauley v. Drug Depot, Inc*.,

    2016 WL 4591831, *3 (N.D. Ill. Aug 31, 2016) .   .   .   .   13

*Griffith v. ContextMedia, Inc*.,

    2016 WL 6092634, *1-2 (N.D. Ill. Oct. 19, 2016) .   .   .   .   13

*Hewlett v. Consol. World Travel, Inc*.,

    2016 WL 4466536, at *2 (E.D. Cal. Aug., 23, 2016) .   .   .   12

*Holderread v. Ford Motor Credit Company*,

    *LLC*, 2016 WL 6248707, *2-3 (E.D.Tex. Oct., 26, 2016) .   .   .   13

*Juarez v. Citibank, N.A*,

    2016 WL 4547914, *2-3 (N.D. Cal. Sept. 1, 2016) .   .   .   .   13

*Krakauer v. Dish Network L.L.C*.,

    168 F.Supp.3d 843, 845 (M.D.N.C., Aug., 5, 2016).   .   .   .   12

*LaVigne v. First Community Bancshares, Inc*.,

    2016 WL 6305992, *1-7 (D. N.M. Oct., 19, 2016) .   .   .   .   12

*Mey v. Got Warranty, Inc*.,

    2016 WL 3645195 (N.D. W.V. June 30, 2016) .   .   .   .   12

*Physicians Healthsource, Inc. v. A-S Medication Solutions*,

    *LLC*, 2016 WL 5390952, FN3 (N.D. Ill. Sept. 27, 2016) .   .   .   13

*Rogers v. Capital One Bank (USA), N.A*.,

    2016 WL 3162592, at *2 (N.D.Ga. June 7, 2016) .   .   .   .   12

*Ung v. Universal Acceptance Corp*.,

    2016 WL 4132244, at *2 (D.Minn., Aug., 3, 2016) .   .   .   12

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

*Worsham v. Travel Options, Inc.,*
    2016 WL 4592373, \*4 (D. Md. 2016) .   .   .   .   .   20

<u>California State Court Cases</u>

*Meyer v. Sprint Spectrum L.P.,*
    45 Cal.4th 634, 640 (2009) .   .   .   .   .   22

*Thrifty-Tel, Inc. v. Bezenek*,
    46 Cal. App. 4th 1564 (Cal. App. 4th Dist., 1996) .   .   .   22

<u>Federal Laws, Statutes and Rules</u>

28 U.S.C. § 1447 .   .   .   .   .   .   .   15, 16

47 U.S.C. § 227 .   .   .   .   .   .   10-14, 16, 18-22

47 C.F.R § 64.1200 .   .   .   .   .   .   14, 20-21

47 C.F.R. 64.1601 .   .   .   .   .   .   18-21

Do-Not-Call Implementation Act of 2003, Pub.L. 108–10 .   .   .   19

F.R.C.P. 12 .   .   .   .   .   .   .   10-11

F.R.C.P. 11 .   .   .   .   .   .   .   16

<u>California Statutes</u>

Cal. Bus. & Prof. Code § 17538.43 .   .   .   .   .   16-17

Cal. Bus. & Prof. Code § 17200 .   .   .   .   .   16-17, 22

Cal. Bus. & Prof. Code § 17204 .   .   .   .   .   .   22

Cal. Civ. Code § 1770 .   .   .   .   .   .   21-22

Cal. Civ. Code § 1780 .   .   .   .   .   .   21-22

Cal. Civ. Code § 3281 .   .   .   .   .   .   22

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

# I. INTRODUCTION

Defendants' late-filed purported 12(b) Motion To Dismiss—their second pleadings attack in this Court--should be stricken in its entirety for the reasons in Objection #1.  The following merits opposition is proffered solely on the off-chance that the Court elects to convert the motion to a motion for judgment on the pleadings, which the Court should not do once the problem of the late filing has been raised, even if appellate courts may do so in cases of mistake to mitigate the effects of the mistake at the trial court level.

Defendants' motion is spurious at best on the merits being filled with conclusory half-formed arguments and basic mistakes of law.  Defendants' motion as directed to the primary gravamen of the SAC, the TCPA and California "little TCPA", claims for the illegal junk faxes, is based entirely on their mistake in not seeing the "and" that connects together the three required elements of the established business relationship" affirmative defense.  Since they missed the "and", they thought showing one of the three required elements was a defense, but this obviously wrong from the clear text.  The remainder of the motion attacking secondary claims or claims plead in the alternative makes similar mistakes.  For example, claiming that the economic loss of money only damages requirement added to California's Unfair Competition Law by Proposition 64 somehow applies to causes of action that Proposition 64 never amended or had anything to do with.  The motion also forgets entirely that regardless of the Proposition 64 law, actual economic harm was repeatedly plead in the SAC.

The following brief offered only if Objection #1 is not sustained.  It addresses each argument in Defendants' motion and does so paralleling the numbering convention of Defendants' brief for the convenience of the Court.

/ / /

/ / /

/ / /

## II. STANDARD OF REVIEW

As discussed above in Objection #1, Defendants are barred from this purported Rule 12(b) motion both by the timing requirement of Rule 12(b) itself and Rule 12(g)(2) since they already filed a previous motion to dismiss. Therefore, and consideration of the merits of the case must be made under Rule 12(c). A Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and therefore the same legal standard applies, but with the notable exception that a motion for judgment on the pleadings leaves no room for amendment to cure and thus should be treated more carefully. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989), *see also*, *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n. 4 (9th Cir. 2011). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989).

## III. ARGUMENT

### A. Plaintiffs Do Not Lack Article III Standing.

Defendants' first argument section, Section II.A, claims it is attacking Plaintiffs' Article III standing under the "concreteness" prong of the "injury-in-fact" requirement. *See*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("*Spokeo*"), *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992). Defendants correctly state that *Spokeo* requires a 'de facto' injury that actually exists. They then incorrectly misquote *Spokeo* to try to falsely equate actual injury with economic injury, and then confusingly proceed to mistakenly try to apply an established business relationship opt-out defense to somehow make Plaintiffs' alleged prima facie harm magically go away. The argument is

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

conclusory at best and confusing at worst, but Plaintiffs will address the *Spokeo* jurisprudence regarding the low level of intangible harm required to be alleged for TCPA cases, explain Defendants' mistaken reading of the inapplicable affirmative defense, and finally show that even if defendants were to prevail they are not entitled to dismissal, only remand to the state court after paying the costs and fees for improper removal.

The Supreme Court in *Spokeo* expressly rejected the only-economic-harm argument:  "'Concrete' is not, however, necessarily synonymous with 'tangible'. Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete. [citations omitted]" *Id.,* at 1549.  The *Spokeo* Court went further, ruling that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.*  Plaintiff still must allege some sort of intangible concrete injury, but that a plaintiff "need not allege any additional harm beyond the one Congress has identified." *Id.*

The harm Congress identified in enacting the TCPA was the invasion of privacy and annoyance caused by "intrusive nuisance calls".  *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740 (2012).  Since the *Spokeo* ruling the huge majority of courts deciding TCPA cases—20 of them so far and counting—have ruled that simply pleading intangible invasion of privacy harm is sufficient for Article III standing.[1]  The Ninth Circuit has now ruled that TCPA violations by

---

[1] Post-*Spokeo* TCPA decisions finding allegations of invasion or privacy and/or other intangible harm sufficient for Art. III standing, with the more developed opinions first:  *Mey v. Got Warranty, Inc*., 2016 WL 3645195 (N.D. W.V. June 30, 2016) (finding that unwanted calls cause both monetary injury by wasting minutes and electricity and, more importantly intangible harm by invasion of privacy and intrusion and wasting time), *LaVigne v. First Community Bancshares, Inc*., 2016 WL 6305992, *1-7 (D. N.M. Oct., 19, 2016) (in depth analysis of recent district court opinions and ruling that pleading of invasion of privacy is all that is necessary in TCPA claim), *Krakauer v. Dish Network L.L.C.*, 168 F.Supp.3d 843, 845 (M.D.N.C., Aug., 5, 2016) (in depth analysis of *Spokeo* rationales), *Cabiness v. Educational Financial Solutions, LLC*, 2016 WL 5791411, *5 (N.D.Cal., Sept. 1, 2016), *Booth v. Appstack, Inc*., 2016 WL 3030256, at *5 (W.D.Wash. May 25, 2016), *Rogers v. Capital One Bank (USA), N.A*., 2016 WL 3162592, at *2 (N.D.Ga. June 7, 2016), *Aranda v. Caribbean Cruise Line, Inc*., 2016 WL 4439935, at *5 (N.D. Ill. Aug. 23, 2016), *Hewlett v. Consol. World Travel, Inc*., 2016 WL 4466536, at *2 (E.D. Cal. Aug., 23, 2016), *Ung v. Universal Acceptance Corp*.,2016 WL 4132244, at *2 (D.Minn., Aug., 3, 2016), *Caudill v. Wells*

---

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

their very nature invade privacy and confer standing. *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients.").

The SAC adequately alleges the intangible harm of invasion of privacy and annoyance. [See, e.g., SAC, 11:14-19 (discussing the lawful and "non-offensive" alternatives to junk faxing)]. The SAC also goes further and adequately alleges tangible economic harm throughout. [See, e.g., SAC, 11:20-23, 15:19-23, etc. (direct economic damages allegations)].

Defendants' Second Motion To Dismiss incorrectly claims that merely appending an opt-out notice to a fax ad somehow makes it TCPA-compliant. [2nd MTD 7:9-28]. The TCPA does not give any fax ad with an opt-out notice a free pass, the TCPA makes sending fax ads illegal and then provides two limited defenses: consent and "established business relationship. Consent is not in issue, and the opt out notice Defendants are talking about is just one of three required elements of the established business relationship defense. *See*, 47 U.S.C. 227(b)(1)(C)(i through iii).

Defendants cite to TCPA subsection (b)(1)(C)(iii) in making their claim but elide any mention of the preceding subsections (i) and (ii). Their mistake is not following the "or" and "and" connections in subsections (b)(1)(C)(i), (ii), **and** (iii)

---

*Fargo Home Mtg.*, Inc., 2016 WL 3820195, at *2 (E.D.Ky. July 11, 2016), *Cour v. Life360, Inc.*, 2016 WL 4039279, at *2 (N.D.Cal. July 28, 2016) (ruling invasion of privacy is sufficient for Art III standing, dismissing complaint on issue of who "initiated" the call), *Dolemba v. Illinois Farmers Insurance Company*, 2016 WL 5720377, *3 (N.D.Ill. Sept., 30, 2016), *A.D. v. Credit One Bank, N.A.*, 2016 WL 4417077, *7 (N.D.Ill. Aug 19, 2016), *Holderread v. Ford Motor Credit Company, LLC*, 2016 WL 6248707, *2-3 (E.D.Tex. Oct., 26, 2016), *Griffith v. ContextMedia, Inc.*, 2016 WL 6092634, *1-2 (N.D. Ill. Oct. 19, 2016), *Espejo v. Santander Consumer USA, Inc.*, 2016 WL 6037625, FN3 (N.D. Ill., Oct. 14, 2016), *Brodsky v. HumanaDental Insurance Co.*, 2016 WL 5476233, *10-11 (N.D. Ill., Sept. 29, 2016), *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 2016 WL 5390952, FN3 (N.D. Ill. Sept. 27, 2016), *Juarez v. Citibank, N.A*, 2016 WL 4547914, *2-3 (N.D. Cal. Sept. 1, 2016), *Fauley v. Drug Depot, Inc.*, 2016 WL 4591831, *3 (N.D. Ill. Aug 31, 2016), *Adamo v. Synchrony Bank*, 2016 WL 3621129 (M.D. Fla. July 6, 2016).

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

to see that all three are required elements of the established business relationship defense:

> "(C) [it shall be unlawful] to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless—
>
> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
>
> (ii) the sender obtained the number of the telephone facsimile machine through—
>
>> (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or
>>
>> (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; **<u>and</u>**
>
> (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D)…"
>
> 47 U.S.C. 227(b)(1)(C) (emphasis added).[2]

Thus, whether the faxes had an opt out notice or not is irrelevant if the sender did not have an established business relationship with the recipient beforehand and obtained the fax number through voluntary communication of it by the sender. *Id*.

---

[2] See also, 47 C.F.R. 64.1200(a)(4)(i – iii), detailing the same required three elements for a defendant to assert the established business relationship defense.

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

The SAC unequivocally and expressly avers that the Plaintiffs did not have any established business relationship with the Defendants.  [SAC, 10:27-28, 14:25-26].  Where the first required element of an affirmative defense is repudiated by the Complaint no motion to dismiss can be supported regardless of what averments relate to other elements since all elements are required for the defense.  Since Defendants' made a fatal mistake in basic statutory analysis by missing the all-important "and" linking the elements of the "established business relationship" defense together, their entire theory is fatally flawed.[3]

Finally, while Defendants request dismissal if they were somehow found to prevail in their jurisdictional attack, they forget that they—not Plaintiffs—invoked the limited jurisdiction of this Court.  If the jurisdiction they claimed is actually lacking, the only available remedy is to remand the case back to the state court and impose costs and attorney's fees sanction for the waste of federal court time they improperly requested.

The statute at issue here, 28 U.S.C. § 1447(c), states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." "[T]he literal words of §1447(c) . . . on their face, give . . . no discretion to dismiss rather than remand an action. The statute declares that, where subject matter jurisdiction is lacking, the removed case *shall* be remanded." *Int'l Primate Prot. League v. Admin's of Tulane Edu. Fund*, 500 U.S. 72, 89 (1991) (emphasis in original), *see also*, *Polo v. Innoventions International*, ___ F.3d. ___ (9th Cir. Aug. 18, 2016) ("The rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case.").

---

[3] Defendants' reliance on *ARcare v. Qiagen North American Holdings, Inc*., 2017 Lexis 8344 (C.D. Cal 2017), is misplaced and entirely off point since they cannot identify pleading allegations supporting all three required elements of the "established business relationship" defense.  To the extent the unusual logic of that district court opinion may interpret *Spokeo* as requiring economic harm , such a conclusion would be out of step with the clear majority of courts requiring only intangible invasion of privacy and annoyance harm listed in FN1, above.

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

Furthermore, 28 U.S.C. § 1447(c), states: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Rule 11 requires that any claim an attorney presents to the Court is warranted by existing law and "is not being presented for any improper purpose", Rule 11also allows for the imposition of sanctions for unwarranted and improper submissions.  Defendants averred and warranted that this District Court had subject matter jurisdiction to hear this case when they motioned to remove the case to Federal court and are now trying to secure a dismissal by repudiating their own word.  If the case is remanded now, Defendants' falseness in claiming jurisdiction for removal would be the sole cause and would be a textbook example of the need for costs and attorney's fees sanctions to offset the massive increase of cost and delay to Plaintiffs.

## B. The SAC Adequately Alleges Standing For Claims Under B&P § 17538.43 and B&P § 17200.

Defendants make a conclusory claim in the Second Motion to Dismiss that the SAC did not plead economic harm.  The SAC does, however, make direct economic harm allegations.

The SAC, in the B&P § 17538.43 claim section, clearly alleges: "Plaintiffs incurred actual damages as a result of the unsolicited facsimile advertisements, including loss of electricity, paper, and ink used to print the unsolicited facsimile advertisements, as well as repeated loss of use of Plaintiffs' fax machine and phone line."  [SAC, 15:19-21].  The SAC also makes the same allegation for the TCPA claims that the B&P § 17200 claim is predicated upon.  [SAC, 11:20-22].  The SAC also, in the B&P § 17200 claim section, refers back to these direct economic harm allegations: "As set forth in this complaint, Plaintiffs have suffered injury in fact and lost money or property as a result of Defendants' unfair competition." [SAC 22:4-5].

Thus, the SAC more than adequately pleads economic harm for all the claims even if it is only required for §17200.  Defendants also incorrectly assert that both Cal Bus and Prof. Code § 17538.43 and Cal Bus and Prof. Code § 17200 require economic harm when in actuality only the latter does.  Plaintiffs address this mistake in more detail in their opposition to Defendants' Motion For Partial Summary Judgment.  The mistake is of little import here since this motion is limited to the pleadings and the pleadings unequivocally allege economic harm throughout.

## C. Plaintiffs' Third Claim Is Well Pleaded

Defendants' attack on the pleading standard for the SAC's Third Claim is as conclusory as the rest of their Motion To Dismiss.  We agree that the elements for the third claim violation are to: (1) initiate a call, (2) using any automatic telephone dialing system, (3) to any residential number.  Defendants' motion argument, though, skips over the SAC paragraph 70 which details the time and date of each alleged call to Plaintiff Moser.  Instead they choose to quote the next catch-all paragraph which just reserves rights for any more calls Plaintiff Moser may later discover were made by Defendants.  [SAC, 17:1-8].  SAC paragraph 70 clearly alleges when Plaintiff received the calls at issue and that they were made by Defendants using an automatic telephone dialing system.  Since only Defendants know the model number of the automatic telephone dialing system they used, no further pleading specificity is possible, or needed.  *See*, *Carolina Ca. Ins. Co. v. Team Equipment, Inc*., 741 F.3d 1082, 1086 (9th Cir. 2014), *citing with approval*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2nd Cir. 2010) ("The *Twombly* plausibility standard … does not prevent a plaintiff from pleading facts alleged 'upon information and belief' [] where the facts are peculiarly within the possession and control of the defendant").  Therefore the SAC third claim is well pleaded.

### D. Plaintiffs' Sixth Claim Is Unquestionably Entitled To a Private Right of Action, and Since The Fourth & Fifth Claims Are Merely Repetitive Of The Sixth Claim, Any Motion To Dismiss Them Is Moot.

Defendants in their Second Motion to Dismiss the SAC argue based on one District Court opinion that there is no private right of action for violations of 47 C.F.R. 64.1601(e), Plaintiffs' sixth claim.  [2nd MTD, 13:11, 14:21].  Defendants are incorrect as to 47 C.F.R § 64.1601(e) and their case is to no avail since it merely makes guesses as to the interconnection of the TCPA statute and its attendant regulations, while the regulatory history contradicts those guesses.

Subsections (b) and (c) of the TCPA each separately grant a private right of action for violations of that subsection or the regulations prescribed under that subsection.  47 U.S.C. § 227(b)(3)(A) and (c)(5)(A).  Thus, to have a private right of action the regulation at issue must have been promulgated under subsection (b) or (c) of the TCPA.

The FCC does not usually identify which specific TCPA subsection or later TCPA-amending law a regulation is promulgated under in its rulemaking orders. The federal register notices, likewise, do not identify the specific sections.  Thus courts must sometimes dive into the murky waters of divining the FCC's intent from context in the orders. However, the genesis of 47 C.F.R 64.1601(e) is quite clear compared to some other regulations, so no such analysis is needed.

In the FCC's first Report and Order implementing the TCPA, there was discussion of what the FCC might do under the broad latitude of subsection (c). *Report and Order, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8756-62, at para. 7-17 (1992) ("*FCC 1992 Order*").  The entirety of Section B of the *FCC 1992 Order* discusses how to implement TCPA subsection (c), the first authority cited in footnote 7 is TCPA subsection (c), and no other citation is made to any other TCPA subsection. *Id*. Caller ID was discussed and the FCC considered having a special area code for

telemarketers, however these ideas were rejected for a number of reasons, including the lack of universal adoption of SS7 switching technology at that time, which was necessary for Caller ID. *FCC 1992 Order*, 7 FCC Rcd. at 8761-62, at para. 16-17. Also discussed but rejected back in 1992 was the creation of a Do Not Call Registry. *FCC 1992 Order*, 7 FCC Rcd. at 8761, at para. 14-15.

In 2003 Congress revisited the idea of Do Not Call Registry and ordered the FTC and FCC to make one and the FCC implemented its Do Not Call rules in *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (2003) ("*FCC 2003 Order*"). [4]   The *FCC 2003 Order* makes a narrow rule that **only telemarketers** must transmit Caller ID and enacted it as 47 C.F.R. §64.1601(e). *FCC 2003 Order*, 18 FCC Rcd. 14014, 14118-23, at para.173-184; *see also*, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 71 FR 75122, 012006 WL 3623623 (December 14, 2006) (recording amendment). The very first sentence of the Caller ID section of the *FCC 2003 Order* refers back to the prior *FCC 1992 Order* discussion of Caller ID, which was had under TCPA subsection (c). *FCC 2003 Order* at para.173. The entire Caller ID section of the *FCC 2003 Order* is replete with references back to TCPA subsection (c), which is no surprise given that almost the entirety of the order is concerned with creating and enforcing the Do Not Call Registry envisaged under TCPA subsection (c). So, the context would strongly indicate that the Caller ID requirement of 47 C.F.R. §64.1601(e) is promulgated pursuant to TCPA subsection (c).

But the even stronger argument is that there is no other subsection of the TCPA that 47 C.F.R. §64.1601(e) could possibly be promulgated under **because no other subsection is limited to telemarketing**. The TCPA requires all artificial or prerecorded voice calls to state the identity of the caller and their phone number

---

[4] *See also*, Do-Not-Call Implementation Act of 2003, Pub.L. 108–10, codified at 15 U.S.C. § 6101 et. seq.

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

during the message in subsection (d), which has no private right of action.  But that requirement is made on literally all artificial or prerecorded voice, not limited to telemarketing calls and the FCC would be far exceeding the scope of its Congressional authority if they limited a general prohibition required by statute to just a tiny subsection of calls. [5]  The TCPA also includes a subsection (e) having to do with Caller ID, but that is explicitly promulgated pursuant to the Truth in Caller ID Act, which was enacted in 2009, years after the *FCC 2003 Order*, which created 47 C.F.R. § 64.1601(e), and is therefore not the source.  The only possible source is the TCPA subsection (c), because that is the only subsection or Caller ID-related statute dealing exclusively with telemarketing calls.  All of the other TCPA subsections and Caller ID-related statutes go far beyond the narrow world of telemarketing calls.  So, the only Congressional grant of authority the FCC could promulgate 47 C.F.R. § 64.1601(e) under is subsection (c) of the TCPA, which orders the FCC to, "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations".  47 U.S.C. § 227(c).

Now, moving on to the elements of the violation, 47 C.F.R 64.1601(e) requires that any, "person or entity that engages in telemarketing [] must transmit caller identification information."  Thus the elements are that Defendants:

    1) engaged in telemarketing, and

        a) did not transmit accurate Caller ID information, or

        b) blocked the transmission of Caller ID information.

---

[5] The failure to see that TCPA subsection (d) applies to all prerecorded calls rather than being limited to telemarketing  is the small but important  mistake made by Maryland District Court in *Worsham v. Travel Options, Inc.*, 2016 WL 4592373, *4 (D. Md. 2016).  The mistake is understandable since the Maryland District Court spends most of its analysis on 47 C.F.R. §64.1200(b)(1-2) rather than 47 C.F.R. §64.1601(e).  While the Court's logic regarding 47 C.F.R. §64.1200(b)(1-2) might be persuasive other courts have come to other conclusions using the same textual analysis method.  *See, e.g., Charvat v. Echostar Satellite*, LLC, 621 F.Supp.2d 549, 558 (S.D. Ohio 2008*), remanded on other grounds,  Charvat v. Echostar Satellite*, LLC 630 F.3d 459 (6th Cir., 2010).  Plaintiffs obviously agree with these other courts, but it is irrelevant in this case since 47 C.F.R. §64.1601(e) covers the same ground and is on firmer footing since TCPA subsection (c) and  47 C.F.R. §64.1601(e) are the only statute sections and code that are limited to telemarketing calls only.

Plaintiff's Objections & Opposition to Late-Filed Second Motion To Dismiss

The SAC paragraph 83 squarely alleges that Defendants were engaged in telemarketing and alleges that Defendants blocked the transmission of Caller ID for those calls.  [SAC, 19:12-19].  Therefore, the sixth claim for violation of 47 C.F.R 64.1601(e) under the private right of action in 47 U.S.C 227(c) is both legally justified and well pleaded.

The fourth and fifth claims under 47 C.F.R. §64.1200(b) are entirely repetitive of the 47 C.F.R 64.1601(e) since they similarly require identification of the caller and add no additional damages.  As discussed above, a private right of action and statutory damages can only come from subsection (b) or (c) for each call.  Any private right of action for them sourced in 47 U.S.C 227(b) would render them effectively moot since the calls themselves use up that private right of action.  47 U.S.C. 227(b)(3)(A) ("an action based on a violation of this subsection").  Any private right of action sourced in 47 U.S.C 227(c) would render them effectively moot since the 47 C.F.R 64.1601(e), above, uses up that private right of action.  47 U.S.C. 227(c)(5)(A) ("an action based on a violation of the regulations prescribed under this subsection to enjoin such violation").  Since the fourth and fifth claims provide no possibility of recovery beyond the sixth claim, and quite frankly the private right of action for the sixth claim is more certain, any motion to dismiss the fourth and fifth claims is moot since they are redundant anyway.

### E. The California Legal Remedies Act Does Not Require Economic Harm

Defendants again mistakenly try to claim a requirement for economic harm where there is none in attacking the SAC's California Legal Remedies Act pleadings.  *See*, Cal. Civ. Code § 1770 ("CLRA Section 1770"), Cal. Civ. Code § 1780 ("CLRA Section 1780"). There is no requirement that the damages for the CLRA must be economic or specific damages within the parlance of California law.

The operative statute that contains the damages element for CLRA violations is CLRA Section 1780 which reads: "Any consumer who suffers **ANY** damages as a result of the use or employment by any person of a method, act or practice declared to be unlawful by Section 1770 may bring an action against that person….." Cal. Bus. and Prof. Code § 1780(a) (emphasis added). In comparison, the damages provision for B&P § 17200 specifically states, "who has suffered injury in fact and has lost money or property". Cal Bus and Prof. Code § 17204 ("B&P § 17204"). Clearly the B&P § 17204 language is much narrower that CLRA Section 1780's "any damages" language. Indeed, the California Supreme Court has ruled "any damages" in CLRA Section 1780 is a broader term than "actual damage". *See*, *Meyer v. Sprint Spectrum L.P.,* 45 Cal.4th 634, 640 (2009) (*"Meyer"*). Therefore, Plaintiff Moser does not need to prove "economic" or "actual" damages, only "any" damages.

Under California law damages is broadly construed as suffering, "detriment from the unlawful act or omission of another". Cal. Civ. Code § 3281. This is a very broad scope of damages that easily includes intangible harms like invasion of privacy and pain and suffering in addition to economic harms. No less than the Supreme Court of the United States has stated that intangible harms are recognizable harms that confer standing under the much stricter standing requirements of the United States Constitution. *See*, *Spokeo, supra.* In addition intangible harm such as lose of use of a phone line, has been shown to be a form damage that provides a basis for a claim under California law. *See*, *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1564 (Cal. App. 4th Dist., 1996). Finally, it is clear that "any" damages includes, "transaction costs and opportunity costs". *Meyer, supra*, 45 Cal.4th at 640.

As discussed above, the SAC actually pleads both intangible harm and economic harm, so the pleading requirement is met directly either way. [SAC, 15:19-21, 11:20-22, 22:4-5]. Finally, the Ninth Circuit has recently ruled, TCPA

violations by their very nature invade privacy and thus confer injury-in-fact standing that equally easily meets the "any" damages CLRA Section 1780 standard. *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

## F.  Defendants' Theory Of Consent To The Ninth and Tenth Claims Is Based On Their Fatal Mistake Regarding The Established Business Relationship Defense And Its Opt Out Notice Element.

The Second Motion To Dismiss tries to argue a convoluted theory of consent to the ninth and tenth claims for trespass to conversion and chattel, that Plaintiffs "consented" because Defendants included an opt out in their fax ads.  As discussed in Section A, above, putting an opt-out notice on a junk fax ad does not magically make a fax legal.  The opt out language is the last of three required elements to prove up an "established business relationship" defense.  Defendants lack both of the first two required elements, namely the "established business relationship" formed prior to the junk fax transmission and obtaining the fax number through a voluntary communication or publication of the recipient.  The lack is both evidentiary and, more importantly here, in the pleadings.  Since Defendants have made a fatal mistake in their misunderstanding of the established business relationship defense, their consent argument based on that mistaken understanding is equally incorrect.  Furthermore, the FAC directly alleges that Defendants were never given any consent.  [SAC, 11:1-2, 14:27-28].

## G. The Cause Of Action For Conspiracy Is Only In The Complaint To Highlight The Agency Theories

Of course the general conspiracy is not a cause of action.  It was included by Plaintiffs' prior counsel simply to highlight the agency relationships between the Defendants.  While this point could have been drafted in a clearer fashion, it

highlights the agency aspects of the case and should not be removed from the complaint

## **V. CONCLUSION**

For all the foregoing reasons, Plaintiffs request that the Court sustain Objection #1 and strike the entire late-filed Second Motion to Dismiss, sustain Objection #2 and strike the entire standing argument in the motion, and/or deny the motion in its entirety.

In the unlikely event the Court is inclined to grant any of the motion as it relates to standing and subject matter jurisdiction, remand is non-discretionary and Plaintiffs request costs and attorney's fees.  Plaintiffs have expended attorneys fees and costs in the amount of $82,958.65 since remand to this Court.  Plaintiff requests that the Court order this sanction against Defendants and/or their attorneys, or in the alternative, set an Order To Show Cause Regarding Sanctions and set a briefing schedule.

DATED: September 4, 2017               **PRATO & REICHMAN, APC**


_/s/ Christopher J. Reichman_____
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing instrument as well as all attached documents were served upon all counsel of record in the above entitled and numbered cause on the date listed below.

__X__  Via ECF

Gene S. Stone, Esq.
gstone@homan-stone.com
HOMAN & STONE
12 North Fifth Street
Redlands, CA 92373

DATED: September 4, 2017          **PRATO & REICHMAN, APC**


          _/s/ Christopher J. Reichman_____
          By: Christopher J. Reichman, Esq.
          **Prato & Reichman, APC**
          Attorneys for Plaintiffs

- 25 -