Christopher J. Reichman SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MEYER, et. al.<br><br>               Plaintiff,<br><br> vs.<br><br>CAPITAL ALLIANCE GROUP, et. al.,<br><br>               Defendants. | Case No.: 15-CV-2405-WVG<br><br>**PLAINTIFF'S CONTENTIONS OF FACT AND LAW AND PRETRIAL DISCLOSURES UNDER FED. R. CIV. P. 26(A)(3)**<br><br>Hon. William V. Gallo<br>Trial: December 4, 2017, 9:00 am |

## PLAINTIFF'S CONTENTIONS OF FACT AND LAW

### First Cause of Action

Violations of the Telephone Consumer Protection Act of 1991

(47 U.S.C. § 227(b)(1)(C).)

Legal Authority:

The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a

telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). Therefore, the evidence must show that Defendant:

1) to send via fax

2) an unsolicited advertisement

3) to a telephone facsimile machine.

In addition the following case authority is applicable:

1. A party is liable for faxes sent on its behalf by a third-party, see *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12407 at para. 35 (1995). *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1254-57 (11th Cir., 2015) (citing to Court-requested opinion letter from FCC), *Siding and Insulation Co. v. Alco Vending*, Inc., 822 F.3d 886, 891-898 (6th Cir., 2016).

2. Computer facsimile services are considered a "telephone facsimile machine". *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14133 at para. 200

Material Facts

     Defendants sent via facsimile fifty-four (54) unsolicited fax advertisements to the telephone facsimile machines of Plaintiff Moser (6), Plaintiff Katz (41) and Plaintiff DCM Properties (7) via their fax ad vendor Absolute Fax. Specifically, Capital Alliance, though its CEO, Mr. Charanvattanakit, admits it hired a company called Absolute Fax to send fax ads on its behalf. Mr. Charanvattanakit agrees that he knew Absolute Fax would send fax advertisements for Capital Alliance Group. Mr. Charanvattanakit admits Capital Alliance Group paid Absolute Fax to send the fax ads. Mr. Charanvattanakit admits that Absolute Fax sent these fax ads. He also admits that he did not discuss TCPA compliance with Absolute Fax. The

phone numbers on every one of the fax ads received by Plaintiffs forwards to Capital Alliance Group via its telephone service Ringcentral.com.  When the Plaintiffs called the phone numbers on the facsimiles the calls rang to Capital Alliance Group.  Employees of Capital Alliance Group knew that Capital Alliance Group was engaging in fax advertising.  The facsimiles are for telemarketing purposes as seen on the faces of the faxes.

## **Second Cause of Action**

Violations of California Business and Professions Code § 17538.43

Legal Authority:

Subsection (b)(1) of the California Business and Professions Code section 17538.43 makes it unlawful, "for a person or entity, if either the person or entity or the recipient is located within California, to use any telephone facsimile machine, computer, or other device to send, or cause another person or entity to use such a device to send, an unsolicited advertisement to a telephone facsimile machine." The elements are similar to the previous TCPA fax ad violation with the additional element that the sender or recipient be located in California:

1) to send via fax, or to cause another person/entity to send via fax,

2) an unsolicited advertisement

3) to a telephone facsimile machine, and

4) sender or recipient must be located in California.

In addition the following case authority is applicable:

1. A party is liable for faxes sent on its behalf by a third-party, see *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12407 at para. 35 (1995).  *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1254-57

(11th Cir., 2015) (citing to Court-requested opinion letter from FCC), *Siding and Insulation Co. v. Alco Vending*, Inc., 822 F.3d 886, 891-898 (6th Cir., 2016).

2. Computer facsimile services are considered a "telephone facsimile machine". California Business and Professions Code § 17538.43

Material Facts

Defendants sent via facsimile fifty-four (54) unsolicited fax advertisements to the telephone facsimile machines, which are located in California, of Plaintiff Moser (6), Plaintiff Katz (41) and Plaintiff DCM Properties (7) via their fax ad vendor Absolute Fax. Specifically, Capital Alliance, though its CEO, Mr. Charanvattanakit, admits it hired a company called Absolute Fax to send fax ads on its behalf. Mr. Charanvattanakit agrees that he knew Absolute Fax would send fax advertisements for Capital Alliance Group. Mr. Charanvattanakit admits Capital Alliance Group paid Absolute Fax to send the fax ads. Mr. Charanvattanakit admits that Absolute Fax sent these fax ads. He also admits that he did not discuss TCPA compliance with Absolute Fax. The phone numbers on every one of the fax ads received by Plaintiffs forwards to Capital Alliance Group via its telephone service Ringcentral.com. When the Plaintiffs called the phone numbers on the facsimiles the calls rang to Capital Alliance Group. Employees of Capital Alliance Group knew that Capital Alliance Group was engaging in fax advertising. The facsimiles are for telemarketing purposes as seen on the faces of the faxes.

**Third Cause of Action**

Violations of the Telephone Consumer Protection Act of 1991

(47 U.S.C. § 227(b)(1)(B).)

<u>Legal Authority:</u>

The TCPA makes it unlawful for any person to "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)." 47 U.S.C. §227(b)(1)(B). The elements relevant to this case are therefore:

1) make a call

2) using a prerecorded voice

3) to a number assigned to a residential telephone service.

In addition the following case authority is applicable:

See Agency Below

<u>Material Facts</u>

Defendants used their third party calling service, Message Communications, to make telephone calls using a prerecorded voice to Plaintiff Moser's residential telephone service on four occasions. Specifically, Capital Alliance, though its CEO, Mr. Charanvattanakit, admits it hired a company called Message Communications to make calls on its behalf. Mr. Charanvattanakit agrees that he knew Message Communications would make prerecorded phone calls for Capital Alliance. Mr. Charanvattanakit admits Capital Alliance paid Message Communications to make the calls. Mr. Charanvattanakit admits that Message Communications made these calls. Mr. Ken Moser received four of these calls. While the Caller ID was falsified and no company name was used in the prerecorded portion of the call to try to evade liability, Mr. Moser played along with two of the calls and after answering a few prerecorded "push 1 if you are

interested" type automated queries, he was connected to a sales representative working for Capital Alliance Group. After the calls wherein Mr. Moser faked interest to determine the identity of the caller, Capital Alliance Group sent him follow up e-mails identifying themselves as the caller. One of those e-mails even states that it is from the desk of Defendant Mark Mendoza.

## **Fourth Cause of Action**

Violations of 47 C.F.R. § 64.1200(b)(1) for initiating telephone using a artificial or pre-recorded voice to deliver a message without identifying the entity responsible for the call.

<u>Legal Authority:</u>

At this time based on the Court's tentative ruling Plaintiff believes it is likely that this cause of action will be dismissed.   As such Plaintiff will amend this Memorandum should the Court not dismiss this cause of action.

## **Fifth Cause of Action**

Violations of 47 C.F.R. § 64.1200(b)(2) for initiating telephone calls using a artificial or pre-recorded voice to deliver a message without identifying the telephone number of the entity responsible for the call.

<u>Legal Authority:</u>

At this time based on the Court's tentative ruling Plaintiff believes it is likely that this cause of action will be dismissed.   As such Plaintiff will amend this Memorandum should the Court not dismiss this cause of action.

///

///

## Sixth Cause of Action

Violations of 47 C.F.R. § 64.1601(e)

Legal Authority:

The Code of Federal Regulations relevant to the TCPA requires that any "person or entity that engages in telemarketing [] must transmit caller identification information."  47 C.F.R. § 64.1601(e).  That Caller ID information must include the phone number and, if possible, the name of the caller or seller on whose behalf the caller is working, and Caller ID cannot be blocked.  47 C.F.R. § 64.1601(e)(1- Therefore, the uncontested evidence for a violation must show that Defendant:

1) was engaged in telemarketing, and

  a) did not transmit accurate Caller ID information, or

  b) blocked the transmission of Caller ID information

In addition the following case authority is applicable:

1. 47 C.F.R. § 64.1601(e) does in fact grant a private right of action.

Material Facts

Defendants used their third party calling service, Message Communications, to make telemarketing telephone calls to Plaintiff Moser's residential telephone service on four occasions without transmitting their caller identification information on any of the calls.  Specifically, Plaintiff Moser did not see Capital Alliance Groups information or number on the caller ID for his residential line. While the Caller ID was falsified and no company name was used in the prerecorded portion of the call to try to evade liability, Mr. Moser played along with two of the calls and after answering a few prerecorded "push 1 if you are interested" type automated queries, he was connected to a sales representative working for Capital Alliance Group. After the calls wherein Mr. Moser faked

Plaintiff's Contentions of Law and Fact

interest to determine the identity of the caller, Capital Alliance Group sent him follow up e-mails identifying themselves as the caller. One of those e-mails even states that it is from the desk of Defendant Mark Mendoza

## **Seventh Cause of Action**

Violations of California Business and Profession Code §1770(a)(22)(A)

Legal Authority:

California Business and Profession Code §1770(a)(22)(A) includes violations for initiating telephone calls to a California telephone number using a pre-recorded message without introduction by a live natural voice providing the name of the entity  calling, the name of the entity being represented, an address or phone number for that entity, and  asking permission to play the recording. Therefore, the evidence must show that Defendant:

1) make a call;

2) to a California telephone number

3) using a prerecorded voice;

4) without introduction by a live natural voice;

5) providing the name of the entity  calling, the name of the entity being represented, an address or phone number for that entity;

6) asking permission to play recording;

In addition the following case authority is applicable:

1. A party just needs to suffer "any injury" to meet the standing requirement under §1770(a)(22)(A).  See California Business and Profession Code §1780, *Meyer v. Sprint Spectrum L.P.,* 45 Cal.4th 634, 640 (2009).

2. Annoyance or inconvenience can be an injury.  Cal. Civ. Code § 3281;*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)

<u>Material Facts</u>

Defendants used their third party calling service, Message Communications, to make telephone calls using a prerecorded voice to Plaintiff Moser's California telephone service on four occasions without introduction by a live voice, or providing any required information, and not asking permission to play the message.    Specifically, Capital Alliance, though its CEO, Mr. Charanvattanakit, admits it hired a company called Message Communications to make calls on its behalf.   Mr. Charanvattanakit agrees that he knew Message Communications would make prerecorded phone calls for Capital Alliance. Mr. Charanvattanakit admits Capital Alliance paid Message Communications to make the calls.  Mr. Charanvattanakit admits that Message Communications made these calls.  Mr. Ken Moser received four of these calls.  While the Caller ID was falsified and no company name was used in the prerecorded portion of the call to try to evade liability, Mr. Moser played along with two of the calls and after answering a few prerecorded "push 1 if you are interested" type automated queries, he was connected to a sales representative working for Capital Alliance Group. After the calls wherein Mr. Moser faked interest to determine the identity of the caller, Capital Alliance Group sent him follow up e-mails identifying themselves as the caller. One of those e-mails even states that it is from the desk of Defendant Mark Mendoza.   Defendants were offering services to facilitate bringing together borrowers and lenders and were not offering loans of their own.  Defendants do not have a California broker number required to broker loans in California.
///

///

## **Eight Cause of Action**

Violations of California Business and Profession Code §17200 for unfair or fraudulent business practices for the violations alleged in the other causes of action.

<u>Legal Authority:</u>

At this time based on the Court's tentative ruling Plaintiff believes it is likely that this cause of action will be dismissed.   As such Plaintiff will amend this Memorandum should the Court not dismiss this cause of action.

## **Ninth Cause of Action**

California common law trespass to chattel.

<u>Legal Authority:</u>

At this time based on the Court's tentative ruling Plaintiff believes it is likely that this cause of action will be dismissed.   As such Plaintiff will amend this Memorandum should the Court not dismiss this cause of action.

## **Tenth Cause of Action**

California common law conversion.

<u>Legal Authority:</u>

At this time based on the Court's tentative ruling Plaintiff believes it is likely that this cause of action will be dismissed.   As such Plaintiff will amend this Memorandum should the Court not dismiss this cause of action.
In addition the following case authority is applicable:

///

### Eleventh Cause of Action

Civil conspiracy

General conspiracy is not a cause of action.  It was included by Plaintiffs' prior counsel simply to highlight the agency relationships between the Defendants. While this point could have been drafted in a clearer fashion, it highlights the agency aspects of the case, but is not a separate cause of action.

### Agency as to Capital Alliance Group/Capital Alliance Partners

Third Cause of Action through Tenth Cause of Action

Legal Authority:

The FCC has ruled that although "a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013).  The Ninth Circuit Court of Appeals has affirmed this ruling and accorded it *Chevron* deference.  *Gomez v. Campbell-Ewald Co.*, 768 F. 3d 871, 877-79 (9th Cir., 2014), *aff'd*, 136 S.Ct. 663 (2016).

The FCC further instructed that federal courts should turn to the federal common law of agency, and that vicarious liability under the TCPA could be established by "a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."  *In re DISH Network, LLC*, 28 F.C.C. Rcd. 6574, 6584, *see also*, *Thomas v. Taco Bell Corp*., 582 Fed.Appx. 678, 679 (9th Cir., 2014) (unpublished).  Under the Restatement there are three kinds of authority: actual authority, apparent authority, and implied or express ratification after the fact.  Restatement (Third) of Agency §§ 2.01, 3.01, 4.01(Am. Law Inst. 2006).  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 n.31 (1989).  In addition a reckless decision to use anyone with a call

Plaintiff's Contentions of Law and Fact

center without any vetting or meaningful supervision demonstrates a disregard for the consuming public and can prove agency.  *United States of America et al. v. Dish Network LLC*, 2017 WL 2427297, *135 (C.D. Ill. 2017)

Material Facts

Capital Alliance Group paid Message Communications to transmit prerecorded messages not once but twice, so they clearly knew what Message Communications was doing after the first payment and manifested assent to the prior acts by making a second payment.  When Capital Alliance Group received informal complaints and then was sued for illegal marketing, Mr. Charanvattanakit testified that he, as CEO, thought the complaints were "crazy" and did not make any attempt to contact or discuss them with Message Communications.  Capital Alliance clearly ratified Message communications making of the calls after the fact by both their conduct and failure to check up even after being formally sued. Capital Alliance Group has no written contract with Message Communications to evidence a TCPA compliance requirement.  Mr. Charanvattanakit admits he did not recall any such term being material or discussed.  Mr. Charranvattanakit only states that at the time of the deposition long after the calls were made that he hoped or believed but did not know Message Communications was making TCPA compliant calls.

**Personal Liability of The corporate officers of Capital Alliance Group/Capital Alliance Partners**

As to All Causes of Action

Legal Authority:

The Federal Communications Act of 1931, of which the TCPA is a part, puts primary liability on the personal officer or actor and only reaches corporate

liability through a simplified version of *respondeat superior*.  "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user <u>as well as of that person</u>."  47 U.S.C. § 217 [emphasis added].  "[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly . . . violate the TCPA should not escape liability solely because they are corporate officers."  *Texas v. American Blast Fax, Inc*., 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001). "Officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act. . . [T]he courts found [individual liability] based on well-developed facts of the defendant's participation such as defendant being the sole stockholder, electing the board of directors, standing to benefit from the infringement, being the incorporator, promoting the infringing product, and designing the infringing product."  *Monsanto Co. v. Hill*, 2004 WL 4996339, *8 (E.D. Mo., 2004) (unpublished).

<u>Material Facts</u>

Mr. Charanvattanakit is the CEO of Capital Alliance Group and had personal participation in and personally ordered and authorized all of the illegal conduct above.  Mr. Charanvattanakit was the person who hired Messaging Communications and Absolute Fax to operate on behalf of Capital Alliance Group. He is the officer who paid these two companies for their services. He knew that absolute fax was sending unsolicited facsimiles. Mr. Charanvattanakit hired Ring Central, which forwarded the calls to every toll free number on the fax ads to

Capital Alliance Group. Even if he did not know about the TCPA violations originally, after he was put on notice by complaints and lawsuits, he did nothing to stop Absolute Fax and Message Communications. In fact, Capital Alliance Group benefited from these fax ads and telemarketing calls by getting leads and clients. Based on the above, Narin Charanvattanakit had personal participation in and personally authorized all of the illegal prerecorded calls and unsolicited fax ads and therefore is liable for these corporate actions of Capital Alliance Group.

Mark Mendoza is the CFO of Capital Alliance. While not engaging in the conduct with the same directness of Narin Charanvattanakit, Mark Mendoza should none the less be found liable for the illegal actions of Capital Alliance.  As CFO, Mr. Mendoza is responsible for the corporate finances. However, he willfully looked the other way while his partner, Mr. Charanvattanakit used cash payments though western union to pay for illegal advertising. There is no evidence of Mark Mendoza questioning these highly irregular overseas cash wire transfers. Mr. Mendoza also took no action to discover how Mr. Charanvattanakit was using advertising after costly lawsuit piled upon lawsuit.

### Willful and knowing violations of TCPA/California Business and Profession Code

As to the First, Second, Third, and Sixth of Action

Legal Authority:

Each of the laws at issue in this case provide for trebled damages for willful and knowing violations of the TCPA and California code.  47 U.S.C. § 227(b)(3), (c)(5); Cal. B&P §17538.43(b)(2). While the TCPA does not define any standard for whether a violation was "willfully or knowingly" made, other parts of the Federal Communications Act of 1931, which the TCPA amends, do define these terms as intent only to do the act done, not intent to violate the law:

"The term "willful", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation…"  47 U.S.C. § 312(f) (providing for sanctions for improper obtaining or use of a radio transmission license). This comports with standard definitions like Black's Law Dictionary: "Proceeding from a conscious motion of the will; intending the result which actually conies to pass . . . In common parlance, 'willful' is used in the sense of 'intentional,' as distinguished from 'accidental' or 'involuntary.'" Black's Law Dictionary (2nd ed. 1910) (available at http://thelawdictionary.org/willful/).

Therefore, Plaintiff suggests that the standard for "willful" or "knowing" does not rise to the level of *scienter*, or knowledge of the wrongness of the act, merely that the caller deliberately and intentionally meant to fax or call the recipient.  "Although neither the TCPA nor the FCC regulations define the terms 'willfully or knowingly', courts have generally interpreted willfulness to imply only that an action was intentional."  *Sengenberger v. Credit Control Servs*., 2010 WL 1791270 (N.D. Ill., 2010), *citing*, *Smith v. Wade,* 461 U.S. 30, 41 n. 8 (1983); *see also*, *Charvat v. Ryan*, 116 Ohio St. 3d 394, 2007 Ohio 6833, 879 N.E.2d 765, 770-771 (Ohio 2007) (knowledge of the law not required to find either a willful or knowing violation).  This interpretation comports with the rest of the TCPA-related regulations that allow exemptions from liability for simple mistakes or the occasional call that might accidentally slip through proper compliance procedures. *See*, *e.g.*, 47 C.F.R. § 64.1200(c)(2)(i) (safe harbor for companies that can prove proper Do-Not-Call List compliance procedures).

Material Facts

In this case Mr. Charanvattanakit, and therefore Capital Alliance Group, knew it was causing the illegal faxes and prerecorded calls to be transmitted to the

general public.  Narin Charanvattanakit paid Absolute Fax and Message Communications to send faxes and make calls to the general public. Mark Mendoza knew of the illegal public marketing or, at best, intentionally kept himself willfully ignorant of it, and did nothing to stop it. All of the faxes and calls were advertisements to the general public, not to any one particular recipient and therefore were not accidental transmissions to the wrong party.  They all reached their intended recipient, the general public.  Since the officers and co-owners of Capital Alliance Group were acting on behalf of Capital Alliance Group in having the calls and fax ads made, Capital Alliance Group transmitted the calls and fax ads willfully and knowingly.

## **Counterclaims and Affirmative Defenses**

Defendants did not assert any counterclaims.  Defendants asserted fifteen affirmative defenses.

## **As to all Affirmative Defenses**

Legal Authority:

There are only two recognized affirmative defenses to TCPA causes of action: 1) prior express consent, and 2) established business relationship.   47 C.F.R § 64.1200(a)(4)(i-iii) (established business relationship for faxes); 47 C.F.R § 64.1200(a)(4)(iv) (prior express consent for faxes); 47 C.F.R § 64.1200(a)(3) (prior express written consent for prerecorded call to residential line); [no established business relationship defense for prerecorded call to residential line]. No other affirmative defenses to the TCPA have ever been recognized by the Ninth Circuit, Supreme Court, nor any other court with binding authority.  Jurisdictional attacks are not affirmative defenses and must be raised by motion.  See, F.R.C.P. 12(b).  A claim that there is a defect in plaintiff's prima facie case is a negative defense, not an affirmative defense. *Zivkovic v. S. California Edison Co.*, 302 F.3d

1080, 1088 (9th Cir.2002) ("A defense which demonstrates that plaintiff has not met its burden of proof as to an element plaintiff is required to prove is not an affirmative defense."); see also, In re Rawson Food Serv., Inc., 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."). Defendants 1st, 3rd, 4th, 9th, 10th, 12th, 14th, 16th, and 17th so-called affirmative defense try to claim defenses other than the two recognized affirmative defenses and are therefore not allowed by law. (The 12th affirmative defense is a reservation of rights and not even a defense at all). Defendants' 2nd, 7th, 11th, 13th, and 15th so-called affirmative defenses are mere attacks on Plaintiffs' prima facie case and are in actuality negative defenses, not affirmative defenses. Defendants' 5th, 6th, and 8th affirmative defenses are the only actual affirmative defenses, claiming established business relationship and "good faith belief Plaintiffs had consented". Plaintiffs note that good faith belief is irrelevant, the TCPA requires consent to be actual and in writing, not mere fluffy beliefs. 47 C.F.R § 64.1200(a)(4)(iv), 47 C.F.R § 64.1200(a)(3). Plaintiff will file a motion in limine to strike all affirmative defenses other than the 5th, 6th, and 8th, and will make contentions of fact and law to those below. In the event any part of the motion in limine to strike affirmative defense is overruled Plaintiffs will expeditiously amend this memorandum as appropriate.

## **Fifth Affirmative Defense**

### Consent

Legal Authority:

Prior express consent is an affirmative defense to the TCPA/California Business and Profession Code violations. 47 C.F.R. § 64.1200(a)(4)(iv). This consent is express consent, so believing that there is consent does not meet the requirements for this defense. 47 C.F.R. § 64.1200(a)(4)(iv).

Material Facts

The Defendants did not have express consent to call or fax the Plaintiffs.

## Sixth and Eight Affirmative Defense

Established Business Relationship

Legal Authority:

There is no defense for established business relationship for pre-recorded telephone calls made in this case, and the Defendants did not allege this affirmative defense against the facsimiles. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1846 ¶39 (2012).

Material Facts

The Defendants have not established business relationship defense to the calls.

## PRETRIAL DISCLOSURES UNDER FED. R. CIV. P. 26(A)(3)

In accordance with FED. R. CIV. P. 26(A)(3) the Plaintiff makes the following pretrial disclosures

Exhibits

Plaintiffs expect to offer at trial all of the following exhibits excluding exhibits solely for impeachment purposes are attached to this document as attachment A.

Witness list

Plaintiffs expect to call at trial all of the following witnesses listed in attachment B to this document.

DATED: October 11, 2017                          **PRATO & REICHMAN, APC**


                                    /s/Justin Prato, Esq
                                    By: Justin Prato, Esq.
                                    **Prato & Reichman, APC**
                                    Attorneys for Plaintiffs

Attachment 1

Case Title; DAVID MEYER, et. al.v. CAPITAL ALLIANCE GROUP, et. al.
Case No; 15-CV-2405-WVG

LIST OF EXHIBITS

| NUMBER | DATEMARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| 1 | | | Facsimile received by DMC Properties Inc |
| 2 | | | Facsimile received by DMC Properties Inc |
| 3 | | | Facsimile received by DMC Properties Inc |
| 4 | | | Facsimile received by DMC Properties Inc |
| 5 | | | Facsimile received by DMC Properties Inc |
| 6 | | | Facsimile received by DMC Properties Inc |
| 7 | | | Facsimile received by DMC Properties Inc |
| 8 | | | Facsimile received by Kenneth Moser |
| 9 | | | Facsimile received by Kenneth Moser |
| 10 | | | Facsimile received by Kenneth Moser |
| 11 | | | Facsimile received by Kenneth Moser |

Plaintiff's Contentions of Law and Fact

| | | | |
|---|---|---|---|
| 12 | | | Facsimile received by Kenneth Moser |
| 13 | | | Facsimile received by Kenneth Moser |
| 14 | | | Facsimile received by Arnie Katz |
| 15 | | | Facsimile received by Arnie Katz |
| 16 | | | Facsimile received by Arnie Katz |
| 17 | | | Facsimile received by Arnie Katz |
| 18 | | | Facsimile received by Arnie Katz |
| 19 | | | Facsimile received by Arnie Katz |
| 20 | | | Facsimile received by Arnie Katz |
| 21 | | | Facsimile received by Arnie Katz |
| 22 | | | Facsimile received by Arnie Katz |
| 23 | | | Facsimile received by Arnie Katz |
| 24 | | | Facsimile received by Arnie Katz |
| 25 | | | Facsimile received by Arnie Katz |

Plaintiff's Contentions of Law and Fact

| | | | |
|---|---|---|---|
| 26 | | | Facsimile received by Arnie Katz |
| 27 | | | Facsimile received by Arnie Katz |
| 28 | | | Facsimile received by Arnie Katz |
| 29 | | | Facsimile received by Arnie Katz |
| 30 | | | Facsimile received by Arnie Katz |
| 31 | | | Facsimile received by Arnie Katz |
| 32 | | | Facsimile received by Arnie Katz |
| 33 | | | Facsimile received by Arnie Katz |
| 34 | | | Facsimile received by Arnie Katz |
| 35 | | | Facsimile received by Arnie Katz |
| 36 | | | Facsimile received by Arnie Katz |
| 37 | | | Facsimile received by Arnie Katz |
| 38 | | | Facsimile received by Arnie Katz |
| 39 | | | Facsimile received by Arnie Katz |

Plaintiff's Contentions of Law and Fact

| 40 | | | Facsimile received by Arnie Katz |
| 41 | | | Facsimile received by Arnie Katz |
| 41 | | | Facsimile received by Arnie Katz |
| 43 | | | Facsimile received by Arnie Katz |
| 44 | | | Facsimile received by Arnie Katz |
| 45 | | | Facsimile received by Arnie Katz |
| 46 | | | Facsimile received by Arnie Katz |
| 47 | | | Facsimile received by Arnie Katz |
| 48 | | | Facsimile received by Arnie Katz |
| 49 | | | Facsimile received by Arnie Katz |
| 50 | | | Facsimile received by Arnie Katz |
| 51 | | | Facsimile received by Arnie Katz |
| 52 | | | Facsimile received by Arnie Katz |
| 53 | | | Facsimile received by Arnie Katz |

Plaintiff's Contentions of Law and Fact

| | | | |
|---|---|---|---|
| 54 | | | Facsimile received by Arnie Katz |
| 55 | | | Email from Capital Alliance Group to Moser |
| 56 | | | Email from Capital Alliance Group to Moser |
| 57 | | | Email from Capital Alliance Group to Moser |
| 58 | | | Email from Capital Alliance Group to Moser |
| 59 | | | Email from Capital Alliance Group to Moser |
| 60 | | | Email from Capital Alliance Group to Moser |
| 61 | | | Email from Capital Alliance Group to Moser |
| 62 | | | Email from Capital Alliance Group to Katz |
| 63 | | | Attachments to Moser Emails |
| 64 | | | Phone.com Call Logs relied on by expert |
| 65 | | | Ring central Call Logs relied on by expert |
| 66 | | | Picture of Caller ID for Moser |
| 67 | | | Picture of Caller ID for Moser |
| 68 | | | Easton Call Logs relied by expert |
| 69 | | | State of Indiana Complaint against Defendants |

Plaintiff's Contentions of Law and Fact

| | | | |
|---|---|---|---|
| 70 | | | State of Indiana Consent Decree against Defendants |
| 71 | | | Web printouts for Zoomcap.com |
| 72 | | | Myfax billing statements for Moser |
| 73 | | | DCM Properties vontage Billing Statements |
| 74 | | | Cox Phone Billing Records Katz |
| 75 | | | Efax Billing Records Katz |
| 76 | | | Email from Capital Alliance Group to Katz |
| 77 | | | Calls Notes created by Moser |
| 78 | | | Calls Notes created by Moser |
| 79 | | | Jeff Hanson Resume |
| 80 | | | Deposition of Charanvattanakit |
| 81 | | | Deposition of Charanvattanakit in Bee, Denning case |
| 82 | | | Easton Call Logs |
| 83 | | | Defendant Response to Plaintiff RFA |
| 84 | | | Defendant Response to Plaintiff RFP |
| 85 | | | Defendant Response to Plaintiff Interrogatories |

Plaintiff's Contentions of Law and Fact

Attachment 2

<u>WITNESSES</u>

The lists of Plaintiff's and Defendant's witnesses are as follows:

    A. PLAINTIFF'S WITNESSES

Non-Expert Witnesses Plaintiff Expects to Call at Trial

| WITNESS | CONTACT INFORMATION |
|---|---|
| Kenneth Moser | Via Prato & Reichman, 8555 Aero Drive, Suite 303, San Diego CA 92123 |
| Arnie Katz | Via Prato & Reichman, 8555 Aero Drive, Suite 303, San Diego CA 92123 |
| David Meyer | Via Prato & Reichman, 8555 Aero Drive, Suite 303, San Diego CA 92123 |
| Narin Charanvattanakit | 1950 East Seventeenth Street, Third Floor, Santa Anna, CA 92705 |
| Mark Mendoza | 1950 East Seventeenth Street, Third Floor, Santa Anna, CA 92705 |
| Christine Duncan | Appearance by stipulation |
| Justine Crane | Appearance by stipulation |

Plaintiff's Contentions of Law and Fact

Expert Witnesses Plaintiff Expects to Call at Trial

WITNESS                              Contact information

Jeffery Hanson                       2625 King View Circle, Spring Valley, CA 91977

Qualifications

IT certified professional with over twenty years experience and extensive experience in the realm of computer electronic forensics.

Substance of Testimony

Mr. Hanson will testify that the phone numbers listed on the Fax exhibits ring to phone numbers belonging to Capital Alliance Group.

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing instrument was served upon all counsel of record in the above entitled and numbered cause on the date listed below.


__X__  Via ECF


Gene S. Stone, Esq.
gstone@homan-stone.com
HOMAN & STONE
12 North Fifth Street
Redlands, CA 92373


DATED: October 11, 2017              **PRATO & REICHMAN, APC**


                                     /s/Justin Prato, Esq
                                     By: Justin Prato, Esq.
                                     **Prato & Reichman, APC**
                                     Attorneys for Plaintiffs